UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Shaun Brandewie<br>c/o Spangenberg Shibley & Liber<br>1001 Lakeside Avenue East<br>Suite 1700<br>Cleveland, Ohio 44114 )<br> )<br> )<br> )<br> )<br> )<br>            and )<br> )<br> )<br>John Newbrough )<br>c/o Spangenberg Shibley & Liber )<br>1001 Lakeside Avenue East )<br>Suite 1700 )<br>Cleveland, Ohio 44114 )<br> )<br>            Plaintiffs, )<br> )<br>      vs. )<br> )<br> )<br>WAL-MART STORES, INC. )<br>c/o statutory agent )<br>CT CORPORATION SYSTEM )<br>1300 East 9th Street )<br>Cleveland, Ohio 44114 )<br> )<br> )<br>            Defendant. )<br> )<br> ) | CASE NO. 1:14-cv-965<br><br>JUDGE<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**[Jury Demand Endorsed Hereon]** |

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

Now come Plaintiffs, on behalf of themselves and all others similarly situated, and for Plaintiffs' Class Action Complaint against the above-captioned Defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), state and aver:

## INTRODUCTION

1.     This class action is a breach of contract claim on behalf of all United States Wal-Mart customers who return merchandise purchased at Wal-Mart's Walmart or Sam's Club stores pursuant to the Walmart or Sam's Club return

policies, but to whom Wal-Mart refunds less than the amount paid. Wal-Mart systematically shortchanges customers who return products to a store located in an area with a lower sales tax than the store from which the product was originally purchased by using that lower sales tax rate to calculate the refund, rather than the amount actually paid. Wal-Mart has the capability of calculating the correct refund amount, as other major retailers do, but it does not. This breaches the sale contract with the customers who are shortchanged.

**PARTIES**

2.     Defendant Wal-Mart Stores, Inc. is Delaware corporation with its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas.

3.     Wal-Mart Stores, Inc. is the ultimate parent company of myriad subsidiaries that operate as a single, global organization, with divisions for: (1) Wal-Mart domestic US Walmart stores and Walmart.com sales; (2) Sam's Club operations; and (3) international business. Wal-Mart exercises complete control of the subsidiaries, which act as agents on behalf of, and within the course and scope of the agency with, Wal-Mart. Wal-Mart's subsidiaries are without separate and distinct corporate identities and are operated as a mere shell, created to perform a function for Wal-Mart's common shareholders.

4.     The named Plaintiffs are Ohio residents who purchased, whether in-store or online, or were gifted, a product from Wal-Mart's Walmart or Sam's Club stores, returned the product pursuant to the contractual terms of Wal-Mart's Walmart or Sam's Club return policies, and were refunded by Wal-Mart less than the full amount paid as a result of Wal-Mart calculating the amount paid on the

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

sales tax rate of the return store location rather than using the actual amount paid (as reflected in the purchase receipt).

5.      All members of the putative national Class are United States residents who purchased, whether in-store or online, or were gifted, a product from Wal-Mart's Walmart or Sam's Club stores, returned the product pursuant to the contractual terms of Wal-Mart's Walmart or Sam's Club return policies, and were refunded by Wal-Mart less than the full amount paid as a result of Wal-Mart calculating the amount paid on the sales tax rate of the return store location rather than using the actual amount paid (as reflected in the purchase receipt).

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed Class is a resident of a different state than Wal-Mart.

7.      Venue is proper in the Northern District of Ohio, pursuant to 28 U.S.C. § 1391, because Wal-Mart is subject to personal jurisdiction there, regularly conducts business in that district through both in-store and online sales through Walmart and Sam's Club stores, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

**COMMON FACTS**

*WAL-MART CONSUMER OPERATIONS*

8.      Wal-Mart generated over $247,000,000,000 in domestic US sales in 2013 through over 4,700 stores in the United States.

9.      In addition to standard "Walmart" stores, Wal-Mart also operates "Sam's Club" membership-only stores.

10.      Wal-Mart operates its retail stores in all 50 states.

11.      Wal-Mart sells products to tens- or hundreds-of-thousands of customers every day.

12.      Every day, Wal-Mart promises its tens- or hundreds-of-thousands of customers they can return products purchased, within a set timeframe, for a refund of the amount paid.

13.      Wal-Mart has nationwide return policies for both its Walmart and Sam's Club stores that give Wal-Mart's customers rights as part of the contract for sale of products from those stores.

14.      Wal-Mart's Walmart and Sam's Club customers expect and understand that the terms of the return policies are part of the sale contract for goods purchased from those respective stores.

15.      Although the return polices differ slightly, for purposes of this claim, both return policies for Walmart and Sam's Club stores provide that customers may return a product with a receipt to receive a refund of the amount paid, as well as allowing customers who purchase a product from one Walmart or Sam's Club store to return the product to another Walmart or Sam's Club store, respectively.

4

## *WAL-MART'S WALMART STORE RETURN POLICIES*

16.     Wal-Mart's nationwide Walmart store return policy provides that customers can return products within a certain timeframe (90 days of the date of sale for most products) and receive a refund of the amount paid.

17.     Wal-Mart publicizes these terms on marketing, on its website and help forums, in-store displays and placards, and through sales associates.

18.     In-store shoppers are told they can return items to a different store than the one from which they purchased the item.

19.     Wal-Mart promises online and in-store Walmart customers they will be refunded the amount paid.

20.     An in-store placard presents the terms of the return policy contract to Walmart customers:

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

5

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO



21.     Online, Walmart store customers are told that most "[i]tems purchased on Walmart.com may be returned either to a store or by mail."

22.     Online, Walmart store customers are told:

> "Most items can be returned within 90 days of when you receive them.  Items purchased on Walmart.com may be returned either to a store or by mail, unless stated otherwise in the list of exceptions below. See the departments below to find out if there are exceptions to the 90-day rule and for instructions on how to return certain types of items.
>
> "Items must be returned in the original manufacturer's packaging, so we recommend you keep your packaging for at least the first 90 days after purchase."

23.     The contract terms created from this policy are that, in exchange for the customer paying for the goods:

a.     Wal-Mart will allow customers or gift recipients 90 days (or some shorter amount depending on the particular goods purchased) to determine whether or not they want to keep the goods.

b.     If the customer or gift recipient decides to reject the goods (that is, "return" them), Wal-Mart will accept return of the goods, in exchange for a refund of the amount paid, or exchange of the product, at the customer's choice, without regard to the reason the goods were rejected.

### WAL-MART'S SAM'S CLUB RETURN POLICY

24.     Wal-Mart provides nation-wide return policy for its Sam's Club stores constituting part of the contract of sale of products with its customers, under which customers can return undamaged products and receive a refund of the amount paid.

7

25.     Wal-Mart's Sam's Club division promises customers that it will "refund purchases in full with a receipt."   See "Return / Refund Policy" at http://help.samsclub.com/app/answers/detail/a_id/251.

26.     Wal-Mart publicizes these terms on Sam's Club marketing, on its website and help forums, in-store displays and placards, and through sales associates.

27.     In-store shoppers are told they can return items to a different store than the one from which they purchased the item.

28.     Wal-Mart promises online and in-store Sam's Club customers they will be refunded the amount paid.

29.     Online Wal-Mart Sam's Club customers are told that:

"We want you to be 100% satisfied, so we offer a 100% guarantee on merchandise and Membership.

"We will refund purchases in full with a receipt. Click here to view our Return/Refund exceptions.

"No receipt: We will refund the purchase(s) at the last selling price with a shopping card.

"Note: Non-Members must have a receipt to return items."

30.     As with Walmart store customers, The contract terms created from this policy are that, in exchange for the customer paying for the goods:

a.     Wal-Mart will allow customers or gift recipients an unlimited period (or some shorter amount depending on the particular goods purchased) to determine whether or not they want to keep the goods.

8

b.      If the customer or gift recipient decides to reject the goods (that is, "return" them), Wal-Mart will accept return of the goods, in exchange for a refund of the amount paid, or exchange of the product, at the customer's choice, without regard to the reason the goods were rejected.

### WAL-MART'S SYSTEMIC BREACH OF THE SALES CONTRACT

31.     Wal-Mart systematically breaches this contract with its customers at Walmart stores and Sam's Club stores by refunding less than the amount paid. When a Wal-Mart customer exercises their contractual right to return a product in exchange for the full refund of the amount paid, Wal-Mart refunds an amount based on the sales tax applicable in the location of the return store.

32.     When a Wal-Mart customer returns a product to a Wal-Mart or Sam's Club store in a location with a lower sales tax than the location of the Walmart store or Sam's Club store from which the customer purchased the product (or jurisdiction applicable to an online purchase), Wal-Mart refunds less than the full amount paid based on the difference between the sales tax in the two locations, applied to the price of the product.

33.     Plaintiffs do <u>not</u> allege any claims regarding Wal-Mart's application, calculation, collection, or remittance to a state entity, of sales tax at the time of the initial sale.

34.     Plaintiffs do <u>not</u> allege any claims regarding transactions in which the calculated amount paid is higher than the actual amount paid.

9

## CLASS PLAINTIFF FACTS

### *SHAUN BRANDEWIE*

35.     On June 28, 2012, Plaintiff Shaun Brandewie purchased a Netgear computer router from the Walmart store located at 6594 Mayfield Road, Mayfield Heights, Ohio 44124 (Store # 5083), for which the amount paid was $37.68.

36.     On June 29, 2012, Plaintiff Shaun Brandewie returned the Netgear computer router to the Walmart store located at 3750 W. Market St., Fairlawn, Ohio 44333 (Store # 1895), for which Wal-Mart refunded him $37.24, or $0.44 less than the amount paid.  Despite his protests to Wal-Mart employees, including an assistant manager, Wal-Mart would not refund the entire amount paid.

37.     On June 28, 2012, Plaintiff Shaun Brandewie purchased a compact fluorescent bulb, among other products, from the Walmart store located at 6594 Mayfield Road, Mayfield Heights, Ohio 44124 (Store # 5083), for which the amount paid was $16.64.

38.     On June 29, 2012, Plaintiff Shaun Brandewie returned the compact fluorescent bulb to the Walmart store located at 3750 W. Market St., Fairlawn, Ohio 44333 (Store # 1895), for which Wal-Mart refunded him $16.44, or $0.20 less than the amount paid. Despite his protests to Wal-Mart employees, including an assistant manager, Wal-Mart would not refund the entire amount paid.

39.     On April 18, 2014, Plaintiff Shaun Brandewie purchased a SanDisk 8GB SDHC Memory Card - 2 pk., among other products, from the Wal-Mart Sam's Club store located at 10250 Brookpark Rd., Brooklyn, OH 44130 (Store #6305), for which the amount paid was $17.13.

10

40.     On April 18, 2014, Plaintiff Shaun Brandewie returned SanDisk 8GB SDHC Memory Card - 2 pk. to the Wal-Mart Sam's Club store located at 3750 W Market Street, Fairlawn, OH 44333 (Store # 6404), for which Wal-Mart refunded him $16.93, or $0.20 less than the amount paid.

41.     As part of the individual contracts for sale of the products in these transactions, Plaintiff Shaun Brandewie was entitled to return the products within 90 days of purchase for Walmart stores, or at any time for Sam's Club stores, with receipt and original packaging, under which circumstances Wal-Mart was contractually obligated to refund the amount paid.

42.     Plaintiff Shaun Brandewie complied with all the terms of the Walmart and Sam's Club store return policies in making the returns.

43.     Plaintiff Shaun Brandewie performed under the separate contracts with Wal-Mart for these transactions.

## *JOHN NEWBROUGH*

44.     On February 26, 2014, Plaintiff John Newbrough purchased 360 Access from the Walmart store located at 3400 Steelyard Drive, Ohio 44109 (Store # 4285), for which the amount paid was $106.92.

45.     On February 27, 2014, Plaintiff John Newbrough returned the 360 Access to the Walmart store located at 905 Singletary Drive, Streetsboro, Ohio 44241 (Store # 2313), for which Wal-Mart refunded him $105.93, or $0.99 less than the amount paid.

46.     As part of the individual contracts for sale of the product in this transaction, Plaintiff John Newbrough was entitled to return the product within 90 days of purchase for Walmart stores, with receipt and original packaging, under

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

which circumstances Wal-Mart was contractually obligated to refund the amount paid.

47.     Plaintiff John Newbrough complied with all the terms of the Walmart store return policies in making the return.

48.     Plaintiff John Newbrough performed under the separate contracts with Wal-Mart for these transactions.

## CLASS TREATMENT

49.     Class treatment is appropriate in this case pursuant to Federal Rule of Civil Procedure 23.

### *DEFINITION*

50.     The class should be defined as:

> **All persons who purchased, or were given as a gift a product purchased, from a United States Walmart store, Sam's Club store, or online for US delivery, to whom Wal-Mart gave a refund or credit, but where the refund or credit was less than the full amount paid for the product, excluding cases where Wal-Mart provided a product exchange rather than a refund, and further excluding Defendant Wal-Mart and its officers and directors.**

51.     The Class should be certified and each Class member should be compensated in a manner that will put the Class member in a position the member would have been in had Wal-Mart not breached the contract.

52.     In cases where the amount of qualifying transactions is ascertainable, but the identity of the person returning the product is not, the funds should be allocated to an appropriate consumer advocacy agent under the *cy pres* doctrine.

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

12

*NUMEROSITY*

53.     Each Class member has been damaged in a relatively modest amount, making individual actions impracticable.

54.     There are tens- if not hundreds-of-thousands of Wal-Mart customers purchasing products every day, and over the course of a single year, many thousands who return products.

55.     Even if just one customer per store per year returned a product and was given less than the amount paid in return because she returned it to a different store in a location with a lower sales tax, there would be over 4,700 plaintiffs (per year) for the class, rendering joinder impossible, not merely impractical.

56.     Even more potential plaintiffs would come from online sales.

57.     When considered over the course of a number of years, the class is even more numerous.

*COMMONALITY AND TYPICALITY*

58.     Each class member has been damaged by the same conduct, in the same way: Wal-Mart's failure to provide a full refund of the amount the class member paid.

59.     There are common questions of fact and law that predominate across the Class, including: (1) the formation and terms of the contract based on Wal-Mart's nationwide Walmart and Sam's Club return policies; (2) whether Wal-Mart promised class members a refund of all amounts paid for merchandise; (3) whether Wal-Mart breached its contract with purchasers by refunding less than the amount paid based on differences in sales tax between the purchase location and

13

return location; (4) whether the Class members have sustained damages; and (5) the proper measure of their damages.

60.     The Walmart and Sam's Club return policies provide identical rights to full refunds of the amount paid.

61.     Because Wal-Mart's respective Walmart and Sam's Club return policies, pricing, and conduct is uniform across its stores nationwide, the legal issues will be common across the Class.  The common questions of fact and law will have common answers throughout the Class.

62.     For the same reason, the defenses will be common across the Class.

63.     The Plaintiffs have the same claims as the class members, making their claims typical of the class.

64.     Common proof of the contract, its terms, and breach, are applicable to the plaintiffs and the class.

### *ADEQUACY*

65.     Plaintiffs are intelligent, understand the claims, are able to represent the interests of the Class, and their interests are aligned with that of the class. The interests of Plaintiffs are not antagonistic to the Class.

66.     The Plaintiffs are part of the class (having purchased or been gifted products from, and returned them to, Wal-Mart's Walmart and / or Sam's Club stores, receiving less than the amount paid in return) and possess the same interest and suffer the same injury as the class members (recovery of the unpaid amount of the amount paid that should have been refunded and any other appropriate relief stemming from the breach).

14

67.    Plaintiffs have chosen attorneys who are experienced in breach of contract claims, class action claims, and complex litigation.

68.    The Spangenberg Shibley & Liber Law Firm and its attorneys have handled complex litigation including class actions and mass tort cases. Spangenberg attorneys have served as lead counsel and liaison counsel in mass tort actions.    The Spangenberg law firm has financed complex litigation and contingency litigation for more than 70 years.    The Spangenberg law firm has a national reputation.

69.    Attorney Myers has focused on consumer and contract claims, provides experienced counsel in that area, and has served as Amicus Curiae counsel in various Ohio state court appellate matters related to complex commercial litigation and contractual disputes involving projects worth tens of millions of dollars.

70.    Counsel and the Class representatives will adequately and diligently pursue the interests of the Class.

### *PREDOMINANCE*

71.    Issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.

72.    The common questions of law and fact described above are the most significant questions for the class action, the resolution of which will resolve the claims other than calculating damages for each class member.

73.    Damages for class members will be easily calculated through formulas, *e.g.*, subtracting the amount returned from the amount paid for a transaction.

15

74.    Wal-Mart's sales systems provide for the calculation of damages, and ascertaining which customers fall within the class definition.

75.    There are no individualized inquiries required for the claims or defenses.

## *SUPERIORITY*

76.    A class action is the superior method of resolving this dispute.

77.    Plaintiffs allege a single course of wrongful conduct by Wal-Mart, making the case particularly well-suited to class certification.

78.    There are no individual inquires required of class members under a breach of contract analysis.

79.    Wal-Mart's sales systems provide an efficient way to obtain information on transactions *en mass*, meaning class treatment would significantly reduce the discovery costs to all parties.

80.    Given the small value of individual damage per transaction (a fraction of the sale representing the difference between the respective sales tax applied), it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages.  Therefore, aggrieved persons will be without any effective redress unless they may employ the class-action device.

81.    Given the unlikelihood that many injured class members will discover, let alone attempt to vindicate, their claims, class action is a superior method of resolving the claims.

82.    No other class actions of this nature are pending against this Defendant in Ohio or any other state to Plaintiffs' knowledge.

16

83. There are no parallel pending individual actions to Plaintiffs' knowledge.

*AMALGAMATED BREACH OF CONTRACT CLAIM*

84. Breach of contract claims across all 50 states consist of substantively identical standard elements, making a claim based on a single contract ideal for class certification. See, e.g., Kleiner v. First Nat. Bank of Atlanta, 97 F.R.D. 683, 692 (N.D.Ga.1983) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.") (citing Broad v. Rockwell Intern. Corp., 642 F.2d 929 (5th Cir.) (en banc) cert. denied, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981) (breach of indenture agreement); Irving Trust Co. v. Nationwide Leisure Corp., 95 F.R.D. 51 (S.D.N.Y.1982) (breach of contract for failure to provide charter tour services); Jennings Oil Co., Inc. v. Mobil Oil Corp., 80 F.R.D. 124 (S.D.N.Y.1978) (validity of general release provision of contract); Davis Cattle Co. v. Great Western Sugar Co., 393 F.Supp. 1165 (D.Col.1975) (breach of contract); Janicik v. Prudential Insurance Co. of America, ——Pa.Super.Ct. ——, 451 A.2d 451 (1982) (interpretation of form insurance contract); Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Assn., 281 Or. 533, 577 P.2d 477 (1978) (form mortgage); Buchanan v. Brentwood Federal Savings and Loan Assn., 457 Pa. 135, 320 A.2d 117 (1974) (form contract); Perlman v. First National Bank of Chicago, 15 Ill.App.3d 784, 305 N.E.2d 236 (1st Dist.1973) (360-day year method of computing interest); Georgia Investment Co. v. Norman, 229 Ga. 160, 190 S.E.2d 48 (1972) (validity of loan

note); <u>Silverstein v. Shadow Lawn Sav. & Loan Assn.</u>, 51 N.J. 30, 237 A.2d 474 (1968) (breach of contract based on method of calculating interest).

85.    Each state requires the following elements to prove a breach of contract claim: (1) a contract; (2) Plaintiff's performance; (3) Defendant's breach of the contract; and (4) damages proximately caused by the defendant's breach. <u>See, e.g.</u>:

a.    [AL] <u>State Farm Fire & Casualty Co. v. Slade</u>, 747 So. 2d 293, 303 (Ala. 1999) (""The elements of a breach of contract claim under Alabama law are as follows: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.")

b.    [AK] <u>Fleenor v. Church</u>, 681 P.2d 1351, 1354 & n.4 (Alaska 1984) (noting that although "courts of equity do not require literal performance of all acts required to be done under the contract" in order for equitable relief to be granted, "under ordinary circumstances, [plaintiff] would be barred from enforcing [defendant's] duty to perform, since he had not fulfilled his own concurrent contractual obligation.") (citing <u>Navato v. Sletten</u>, 560 F.2d 340, 346 (8th Cir. 1977) ("It is axiomatic that before a party can recover upon a contract, he must show his own performance or his own tender thereof."); <u>Native Village of Stevens v. Alaska Management & Planning</u>, 757 P.2d 32, 42-43 (Alaska 1988) (requiring plaintiff to prove existence of valid, enforceable contract in order to maintain action for breach of contract); <u>Winn v. Mannhalter</u>, 708 P.2d 444, 450 (Alaska 1985) (Damages resulting from the breach a required element in an action for breach of contract).

c.    [AZ] <u>Graham v. Asbury</u>, 112 Ariz. 184, 185 (1975) ("To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages.");

d.    [AR] <u>Ultracuts Ltd v. Wal-mart Stores, Inc.</u>, 343 Ark. 224, 231-32 (2000) (""A person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages.");

e.    [CA] <u>Reichert v. General Ins. Co.</u>, 68 Cal. 2d 822, 830 (1968) ("[T]he essential elements of . . . a cause of action [for breach of contract are]: (1) the contract; (2) plaintiff's performance or excuse for

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

nonperformance; (3) defendant's breach, and (4) the resulting damages to plaintiff.");

f.   [CO] <u>Western Distrib. Co. v. Diodosio</u>, 841 P.2d 1053, 1058 (Colo. 1992) ("It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract just prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff.") (citations omitted);

g.   [CT] <u>Chem-Tek, Inc. v. General Motors Corp.</u>, 816 F. Supp. 123, 131 (D.Conn. 1993), ("In pleading an action for breach of contract, plaintiff must plead: 1) the existence of a contract or agreement; 2) the defendant's breach of the contract or agreement; and 3) damages resulting from the breach.") (applying Connecticut law);

h.   [DE] <u>Winston v. Mandor</u>, 710 A.2d 835, 840 (Del.Chan. 1997) (For a breach of contract claim, "plaintiff must demonstrate the existence of the contract, breach thereof and resultant damage.");

i.   [DC] <u>Proctor v. Ward</u>, 83 A.2d 281, 282 (D.C. 1951) (complaint stated the elements of breach of contract where plaintiff alleged: (1) existence of a contract; (2) performance by plaintiff; (3) failure to perform by defendant; and (4) damages caused by the breach);

j.   [FL] <u>Abbott Lab., Inc. v. GE Capital</u>, 765 So. 2d 737, 740 (Fla. 5th DCA 2000) ("The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.");

k.   [GA] <u>Budget Rent-A-Car v. Webb</u>, 220 Ga. App. 278, 279 (1996) ("The elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken.");

l.   [HI] <u>Uyemura v. Wick</u>, 57 Haw. 102, 110-11 (1976) (contract, breach, damages, but nominal damages presumed);

m.   [ID] <u>Mosell Equities, LLC. v. Berryhill & Co., Inc.</u>, 154 Idaho 269, 278 (Idaho 2013) ("The court cannot grant a judgment as to one element of a claim for relief. The elements for a claim for breahc of contract are: a) the existence of the contract; b) the breach of the contract; c) the breach caused damages; and d) the amount of those damages." (citing O'Dell v. Basabe, 119 Idaho 796, 813 (1991);

n.   [IL] <u>Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr.</u>, 323 Ill. App. 3d 15, 27 (2001) ("The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2)

performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.")

o.      [IN] <u>Rogier v. American Testing & Eng'g Corp.</u>, 734 N.E.2d 606, 614 (Ind. Ct.App. 2000) ("The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages.");

p.      [IA] <u>Berryhill v. Hatt</u>, 428 N.W.2d 647, 652 (Iowa 1988) ("[T]he following elements are necessary [] to show a breach of contract: (1) the existence of the contract; (2) the terms and conditions of the contract; (3) that the buyers have performed all the terms and conditions of the contract required of them to now require the [defendant] to perform; (4) that the contract was breached in some particular way; and (5) that the [plaintiff] has suffered damages.");

q.      [KS] <u>Commercial Credit Corp. v. Harris</u>, 212 Kan. 310, 313 (1973) ("In an action based on a contract, the burden of proof is on the plaintiff to show: (I) execution and existence of the contract alleged in the petition; (2) sufficient consideration to support the contract; (3) performance or willingness to perform in compliance with the contract alleged; and (4) the defendant's breach insofar as such matters are in issue.");

r.      [KY] <u>Peters Branch Int'l Shoe Co. v. Jones</u>, 247 Ky. 193, 197 (1933) ("In   order to constitute a cause of action in a case like this [for breach of contract], the pleading must not only state the contract and its breach, but must allege the damage sustained by reason of the breach.");

s.      [LA] <u>Lester Frame v. Comeaux</u>, 735 So. 2d 753, 756 (La. App. 1999) (contract, breach, damages);

t.      [ME] <u>Anderson v. Eastern Coupling Co.</u>, 108 Me. 374, 376 (1911) (ruling that plaintiff properly pled a cause of action for breach of contract upon showing (1) the existence of a contract; (2) plaintiff's performance, (3) defendant's breach; and (4) damages.);

u.      [MD] <u>Taylor v. Nationsbank, N.A.</u>, 365 Md. 166, 175 (Md. App. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation…It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages.");

v.      [MA] <u>Yellin v. Hyman, P.C. v. Ellis & Assocs.</u>, 2001 Mass. Super LEXIS 232, *10 (2001) ("To succeed in a breach of contract action, a

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

claimant must demonstrate (1) that the parties reached a valid and binding agreement, (2) that one party breached the terms of the agreement, and (3) that the other party suffered damages from the breach.");

w.   [MI] <u>Malcolm MacDowell & Associates, Inc. v. Ecorse-Lincoln Park Bank</u>, 325 Mich. 591, 598 (1949) ("[P]laintiff did declare on an express agreement, alleging performance thereof by itself and breach by defendant with resultant damage to plaintiff. Those allegations, standing alone, were sufficient, if proved, to support a judgment for plaintiff.");

x.   [MN] <u>Industrial Rubber Applicators, Inc. v. Eaton Metal Prods. Co.</u>, 285 Minn. 511, 513 (1969) ("In an action on a contract such as this the elements would be (a) the formation of the contract; (b) performance by plaintiff of any conditions precedent to his right to demand performance by defendant; and (c) a breach of the contract by defendant.");

y.   [MS] <u>Frierson v. Delta Outdoors, Inc.</u>, 794 So. 2d 220, 226 (Miss. 2001) (requiring, for a breach-of-contract action, a showing of (1) a valid contract, (2) breach of that contract, and (3) damages);

z.   [MO] <u>White v. Pruiett</u>, 39 S.W. 3d 857, 861-62 (Mo. App. 2001) ("In order to make a submissible case of breach of contract, contractor was required to establish: (1) the existence of a valid contract; (2) the rights and obligations of the respective parties; (3) a breach; and (4) damages.");

aa.  [MT] <u>Tobacco River Lumber Co., Inc. v. Yoppe</u>, 176 Mont. 267, 270 (1978) ("Here, plaintiff set out the relevant terms of the contract in its complaint and alleged that defendants [breached]. Plaintiff also set out three specific ways in which it was damaged by the alleged breach and had a prayer of damage for each claim. We do not feel that more is required to state a claim [for breach of contract].");

bb.  [NE] <u>Vowers & Sons, Inc. v. Strasheim</u>, 254 Neb. 506, 516-17 (1998) ("[I]n order to recover for breach of contract a plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that actuate the defendant's duty.");

cc.  [NV] <u>Orr Water Ditch Co. v. Reno Water Co.</u>, 19 Nev. 60, 65 (1885) (holding that the facts alleged-- contract, breach, and damages -- constituted a cause of action for breach of contract);

dd.  [NH] <u>Bronstein v. GZA Geoenvironmental, Inc.</u>, 140 N.H. 253, 255 (1995) ("[A] cause of action....arises once all the necessary elements

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

21

are present…In the case of a contract action, it would be when the breach occurs.  A breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract.");

ee.  [NJ] <u>John Hancock Mut. Life. Ins. Co. v. King</u>, 1997 WL 373512, *3 (D.N.J. 1997) (applying New Jersey law) ("John Hancock has pleaded the existence of a [contract]. . . . In addition, John Hancock has pleaded that King breached particular provisions of the [agreement], and that John Hancock has suffered damages as a result of King's activities. . . .These pleadings are . . . sufficient to establish John Hancock's claim for breach of contract under New Jersey [law].").

ff.  [NM] <u>Camino Real Mobile Home Park Partnership v. McCarson</u>, 119 N.M. 436, 445 (1995) ("Once a party has established a cause of action for breach of contract by showing the existence of a contract, breach thereof, causation, and actual damage, he or she may be awarded nominal damages and costs, even when failing to establish the amount of compensatory damages.");

gg.  [NY] <u>WorldCom, Inc. v. Sandoval</u>, 701 NY.S.2d 834, 836 (N.Y. Sup. Ct. 1999) ("An action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.");

hh.  [NC] <u>Claggett v. Wake Forest Univ.</u>, 126 N.C. App. 602, 608 (1997) ("To state a claim for breach of contract, the complaint must allege that a valid contract existed between the parties, that defendant breached the terms thereof, the facts constituting the breach, and that damages resulted from such breach.");

ii.  [ND] <u>Jones v. Grady</u>, 62 N.D. 312, 318, 243 N.W. 743, 745 (1932) (finding that a complaint properly states a cause of action for breach of contract where it "recites facts showing the contract, performance by the plaintiffs, breach by the defendants, and concludes with a general allegation of damages.");

jj.  [OH] <u>Garofalo v. Chicago Title Ins. Co.</u>, 104 Ohio App. 3d 95, 661 N.E. 2d 218, 226 (1995) ("Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non breaching party suffered damages as a result of the breach.");

kk.  [OK] <u>Digital Design Group, Inc. v. Information Builders, Inc.</u>, 24 P.3d 834, 843 (Okla. 2001) ("In order to recover on its breach of contract

theory, [plaintiff] needed to prove: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach.");

ll.  [OR] <u>Slover v. Oregon State Bd. Of Clinical Social Workers</u>, 144 Or. App. 565, 570 (1996) ("To state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.");

mm.  [PA] <u>CoreStates Bank N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. 1999) (To establish a claim for breach of contract, a claimant must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.");

nn.  [RI] <u>Konoff v. Lantini</u>, 111 R.I. 691, 696, 306 A.2d 176, 179 (1973) (contract, breach, damages);

oo.  [SC] <u>Fuller v. Eastern Fire & Casualty Ins. Co.</u>, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962) ("This being an action for breach of contract, the burden was upon the [insured] to prove the contract, it's breach, and the damages caused by such breach.");

pp.  [SD] <u>McKie v. Huntley</u>, 620 N.W.2d 599, 603 (S.D. 2000) ("An action for breach of contract requires proof of an enforceable promise, its breach, and damages.");

qq.  [TN] <u>Tedder v. Raskin</u>, 728 S.W.2d 343, 351 (Tenn App. 1987) (Under the law of Tennessee, the essential elements of a breach of contract claim are the existence of a contract, breach of that contract, and injuries or damages proximately caused by the breach.");

rr.  [TX] <u>Frost Nat'l Bank v. Burge</u>, 29 S.W.3d 580, 598 (Tex.Civ.App. 14th Dist. 2000) ("The essential elements in a breach of contract claim are as follows: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.");

ss.  [UT] <u>Bair v. Axiom Design</u>, LLC., 20 P.3d 388, 392 (Utah 2001) ("The elements of a prima facie case for breach of contract are (1) a contract; (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages.");

tt.  [VT] <u>Lapoint v. Dumont Const. Co.</u>, 128 Vt. 8, 10, 258 A.2d 570 (1969) ("In the obligation assumed by a party to a contract is found

his duty, and his failure to comply with the duty constitutes a breach….A contract includes not only what is expressly stated therein but also what is necessarily implied from the language used.");

uu. [VA] <u>Westminster Investing Corp. v. Lamps Unlimited, Inc.</u>, 237 Va. 543, 379 S.E.2d 316 (Va. 1989) ("The elements of a breach of contract claim under Virginia law are (1) a legal obligation of a defendant to a plaintiff; (2) a violation or breach of that duty; and (3) consequential injury or damage to the plaintiff.");

vv. [WA] <u>Northwest Indep. Forrest Mfrs. v. Dep't of Labor & Indus.</u>, 78 Wash. App. 707, 712 (1995) ("A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant.");

ww. [WV] <u>Mason County Bd. Of Educ. v. State Superintendent of Sch.</u>, 170 W. Va. 632, 636, 295 S.E.2d 719, 724 (1982) (in a case seeking damages for alleged breach of contract, the plaintiff may rest his case upon proof of a valid contract and its breach);

xx. [WI] <u>Discount Fabric House, Inc. v. Wisconsin Tel. Co.</u>, 117 Wis. 2d 587, 603, 345 N.W.2d 417, 425 (1984) (recognizing the elements of a breach of contract action as a contract, breach of the contract and damages); and

yy. [WY] <u>Reynolds v. Tice</u>, 595 P.2d 1318, 1323 (1979) ("The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages... This is often stated, as the court here instructed, as failure without legal excuse to perform any promise which forms the whole or part of a contract.").

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

86. Plaintiffs incorporate all other paragraphs of this Complaint as if fully rewritten herein.

87. Plaintiffs had a contract with Wal-Mart under which they had a set period of time (up to 90 days for Walmart, or unlimited time for Sam's Club, depending on the type of product) to reject the product (i.e., "return" it) and receive a full refund or exchange, provided they had a receipt and the original packaging.

24

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

88.     Plaintiffs exercised the right to return products within the time period applicable for that type of product.

89.     Plaintiffs either had the receipt and original packaging, or Wal-Mart accepted performance without same, waiving such requirements.

90.     Defendant breached the contract by refunding less than the purchase amount the Plaintiffs paid for the products.

91.     As a result of the Defendant's breach, Plaintiffs suffered harm in the amount of the purchase amount paid for the product that was not refunded by Wal-Mart.

92.     WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request relief as follows:

a.     An order certifying the proposed Class, and appointing Plaintiffs and their counsel of record to represent the proposed Class;

b.     Judgment in favor of Plaintiffs and the proposed Class and against Wal-Mart in the amount of the actual damages of Plaintiffs and the proposed Class.

c.     An order awarding attorneys' fees and costs of suit;

d.     Pre-judgment and post-judgment interest; and

e.     Such other and further relief as the Court deems just and proper.

**<u>A TRIAL BY JURY IS HEREBY DEMANDED.</u>**

*/s/ William B. Eadie*

DENNIS R. LANSDOWNE (OH#: 0026036)
STUART E. SCOTT (OH#: 0064834)
NICHOLAS A. DICELLO (OH#: 0075745)

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

WILLIAM B. EADIE (OH#: 0085627)
DANIEL FRECH (OH#: 0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio  44114
(216) 696-3232 | (216) 696-3924 (FAX)
*dlansdowne@spanglaw.com*
*sscott@spanglaw.com*
*ndicello@spanglaw.com*
*weadie@spanglaw.com*
*dfrech@spanglaw.com*
www.spanglaw.com

***Lead Class Counsel for Plaintiffs***


DANIEL J. MYERS (OH# 0087909)
**MYERS LAW, LLC**
610 Skylight Office Tower
1660 West Second Street
Cleveland, Ohio  44113
P:  (216) 236-8202
F:  (216) 674-1696
*DMyers@MyersLawLLC.com*

***Counsel for Plaintiffs***