UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHAUN BRANDEWIE, *et al.*,      )   CASE NO. 1:14-CV-965
                                    )
          Plaintiffs,        )
                                      )  JUDGE JAMES S. GWIN
          vs.             )
                                      )
WAL-MART STORES, INC.,       )
                                      )
          Defendant.      )
                                      )
                                      )

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT WAL-MART STORES, INC.'S
MOTION TO DISMISS**

---

SPANGENBERG SHIBLEY & LIBER LLP  CLEVELAND, OHIO

### TABLE OF CONTENTS

TABLE OF AUTHORITIES CITED ........................................................................ iii

STATEMENT OF THE ISSUES ............................................................................v

MEMORANDUM ................................................................................................1

I.     SUMMARY OF ARGUMENT........................................................1

II.    LEGAL STANDARD ...................................................................3

III.   FACTUAL ALLEGATIONS ..........................................................4

IV.   LEGAL ANALYSIS ....................................................................6

A.    THE UNIFORM COMMERCIAL CODE DOES NOT APPLY TO WAL-MART'S WITHOUT-CAUSE RETURN POLICY. ..........................................6

B.    RETURNING GOODS UNDER WAL-MART'S RETURN POLICIES IS AT MOST A "REJECTION" UNDER THE UCC, WHICH DOES NOT REQUIRE PRE-SUIT NOTICE. ...................................................................9

C.    THE UCC'S BREACH OF WARRANTY PROVISIONS DO NOT APPLY TO WAL-MART'S RETURN AND REFUND TERMS OR PLAINTIFFS' CLAIMS. .................................................................11

D.    PRE-SUIT NOTICE WAS PROVIDED, AND ADEQUACY OF THE NOTICE CANNOT BE DECIDED ON A MOTION TO DISMISS AS IT PRESENTS FACTUAL ISSUES.................................................15

E.    THIS IS NOT A VOLUNTARY PAYMENT DOCTRINE CASE..................19

V.    CONCLUSION........................................................................20

LOCAL CIVIL RULE 7.1(F) CERTIFICATION ....................................................22

CERTIFICATE OF SERVICE .............................................................................23

ii

## **TABLE OF AUTHORITIES CITED**

### **Cases**

Allen v. Andersen Windows, Inc., 913 F.Supp.2d 490 (S.D. Ohio 2012)...............16

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .............4

Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co., 42 Ohio St.3d 40, 537 N.E.2d 624 (1989) ..........................................................................................16, 17

Coupled Products, LLC v. Modern Machine Tool Co., N.D.Ohio No. 3:12CV2727, 2014 WL 293659 (Jan. 23, 2014) ....................................................................17

Directv, Inc. v. Treesh, 487 F.3d 471 (6th Cir.2007) ..............................................3

Furlong v. Alpha Chi Omega Sorority, 73 Ohio Misc.2d 26, 657 N.E.2d 866 (M.C.1993)..................................................................................................13

Huntington Natl. Bank v. Findlay Machine & Tool, Inc., 2012-Ohio-748 (Ohio 3rd App. Dist.)..................................................................................................14

In re Wal-Mart Stores, Inc., 7th Cir. No. 09-8039, 2009 WL 7823752 (Nov. 12, 2009) ..........................................................................................................19

Inge v. Rock Fin. Corp., 281 F.3d 613 (6th Cir.2002)..............................................3

Jones v. Davenport, 2nd Dist. No. 18162, 2001 WL 62513 (Jan. 26, 2001)..........14

Kabco Equip. Specialists v. Budgetel, Inc. 2 Ohio App.3d 58, 440 N.E.2d 611 (1981) .......................................................................................................16

Kabco Equip. Specialists v. Budgetel, Inc., 2 Ohio App.3d 58, 440 N.E.2d 611 (10th Dist.1981) ...........................................................................................9

Lincoln Elec. Co. v. Technitrol, Inc., 718 F.Supp.2d 876, (N.D. Ohio 2010)....14, 17

Pfaff v. Whole Foods Mkt. Group Inc., N.D.Ohio No. 109CV02954, 2010 WL 3834240 at *4 (Sept. 29, 2010)........................................................................8

Salling v. Budget Rent-A-Car Systems, Inc., 672 F.3d 442 (6th Cir.2012) ...........20

Savedoff v. Access Grp., Inc., 524 F.3d 754 (6th Cir.2008) ...................................8

Smith v. BAC Home Loans Servicing, LP, 552 Fed.Appx. 473 (6th Cir.2014).........4

Smythe Cramer Co. v. Silva, N.D.Ohio No. 1:13-CV-01403, 2013 WL 5739752 (Oct. 22, 2013)...............................................................................................8

St. Clair v. Kroger Co., 581 F.Supp.2d 896 (N.D. Ohio 2008) .................14, 16, 17

Whitwell v. Wal-Mart Stores, Inc., S.D.Ill. No. CIV 09-513-GPM, 2009 WL 4894575 (Dec. 11, 2009)................................................................................18

Zion Temple First Pentecostal Church of Cincinnati, Inc. v. Brighter Day Bookstore & Gifts, 2004-Ohio-5499, 970 N.E.2d 441 (1st App. Dist.) ................................13

SPANGENBERG SHIBLEY & LIBER LLP     CLEVELAND, OHIO

**Statutes**

Ohio Rev. Code §1301.302 ................................................................................9

Ohio Rev. Code §1302.01 .................................................................................6

Ohio Rev. Code §1302.02 .................................................................................7

Ohio Rev. Code §1302.56 ...............................................................................12

Ohio Rev. Code §1302.61 ....................................................................9, 10, 12

Ohio Rev. Code §1302.64 ............................................................................6, 12

Ohio Rev. Code §1302.65 .........................................................................2, 6, 11

Ohio Rev. Code §1302.66 ............................................................................7, 14

Ohio Rev. Code §1302.75 .................................................................................7

Ohio Rev. Code §1302.85 ......................................................................6, 7, 13, 15

**Rules**

Fed. R. Civ. Pro. 12 ..........................................................................................8

Fed. R. Civ. Pro. 8 ............................................................................................4

SPANGENBERG SHIBLEY & LIBER LLP    CLEVELAND, OHIO

## **STATEMENT OF THE ISSUES**

Whether the Plaintiff's claim that Wal-Mart breached its return policy contracts, under which Wal-Mart promises to provide a refund for goods returned pursuant to their terms, without regard to whether the goods conform to any warranty, is a breach of warranty claim subject to the Ohio Uniform Commercial Code's notice and chance to cure requirement.

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

**MEMORANDUM**

Plaintiffs oppose Defendant Wal-Mart Stores, Inc.'s Motion to Dismiss (Doc.11).

## I.   SUMMARY OF ARGUMENT

This is a breach of contract case involving Wal-Mart Stores, Inc., refunding customers less than the amount the customer paid when returning purchased items.[1]  When a customer returns a purchased item to a different Wal-Mart store than the one from which they purchased the product, and the return store is in an area with a lower sales tax rate than the purchase store, Wal-Mart refunds less than the amount paid.  Wal-Mart disregards the amount paid on the customer's receipt, and instead refunds a lower amount based on what the purchase price would have been if the goods were bought at the return store location.  Wal-Mart keeps the difference, and the returned items (which it can re-sell).  This results in a systemic shortchanging of customers who are entitled to a full refund.

Because the amounts of individual customer claims may be relatively small, and the number of customers affected high—Wal-Mart serves 140 million customers, per day, in the United States—the claim is brought as a nationwide class action.

Wal-Mart challenges the sufficiency of the pleading because Plaintiffs' allegedly failed to provide notice to Wal-Mart of the breach of contract prior to filing the instant class action lawsuit.  Wal-Mart relies on the Ohio Uniform Commercial

---

[1] The claims cover returns of purchases from physical Walmart and Sam's Club stores in the United States, and online purchases with delivery to the United States. Wal-Mart Stores, Inc. is the ultimate parent company for all of these stores and operations.  Wal-Mart uses a hyphen in its name, but not in the name of its "Walmart" brand stores.  That distinction will be used throughout when referring to the stores and online operations versus the corporate entity defendant.

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

Code section applicable to breach of warranty claims, Ohio Rev. Code §1302.65(C) (UCC 2-607).  (Motion (Doc.11) at 9 of 15 (citing Ohio Rev. Code §1302.65(C)(1) as the basis for Wal-Mart's "failure to provide notice" argument).)

The Uniform Commercial Code "appl[ies] to transactions in goods" **unless** "the context otherwise requires."  The Uniform Commercial Code does not contemplate the type of return policy Wal-Mart uses, in which customers can return goods for any reason, or no reason at all (including buyer's remorse). The default provisions of the Uniform Commercial Code only provide buyers with a refund remedy for cause, that is, when the goods are defective or not in conformity with the description or promises about the goods.  This is not that case.  Wal-Mart now attempts to shoehorn its return and refund terms into the Uniform Commercial Code sections on breach of warranty in order to pick and choose UCC protections to allow it to keep customers' money, and get the purchased items returned.  Wal-Mart does not cite a single case supporting its position.

Even if the Uniform Commercial Code governs Wal-Mart's return and refund policy, however, the closest analogous UCC transaction is that customers "reject" the goods when they return them pursuant to Wal-Mart's no-cause-needed return policy.  The UCC permits customers to inspect and reject goods after a reasonable time, just as Wal-Mart's return policies permit, where tender is not perfect.  Wal-Mart gave up its right to force customers to accept the goods when the goods are perfectly tendered through its return policy, a strategic decision to get more shoppers to its stores.  Customers' return of goods is therefore a "rightful rejection" under which the buyer is entitled to a refund of "so much of the price as has been paid," just as Wal-Mart's return policies provide for a "refund."  Buyers

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

2

need only "seasonably notify" the seller of the rejection, as Plaintiffs and all putative class members did by returning the goods within the return period under Wal-Mart's return policies.  There is no additional pre-suit notice of breach with respect to the goods, or offer by Wal-Mart to cure any non-conformities, required.

Wal-Mart must ignore this analogous transaction, and instead look to a section of the UCC involving breach of warranties and promises about the goods themselves—a claim the Plaintiffs do not make—to benefit from the UCC's notice-of-breach requirement. Under this analysis, the Plaintiffs must have "accepted" and then "revoked acceptance" of the goods, based on such a breach of warranty (and even then, the revocation must be based on the non-conformity of the goods having been hidden).  That does not relate to Wal-Mart's return policy, or the Plaintiffs' claims: there is no breach alleged "as to the goods" in this case.  Even under this strained analysis, however, Plaintiffs did allege pre-suit notice in the Complaint, and sufficiency of such notice is a factual issue.

Because notice was not required, and because (even if it were), notice was alleged, the Motion must be denied.

## II.    LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a trial court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir.2007); see also Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir.2002). Plaintiffs need not demonstrate at the pleading stage that any alleged facts are probable, just "more than a sheer possibility that the defendant has acted unlawfully." Smith v. BAC Home Loans

3

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

Servicing, LP, 552 Fed.Appx. 473, 476 (6th Cir.2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation omitted).

To survive a motion to dismiss, a complaint must merely "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Smith, 552 Fed.Appx. at 476 (6th Cir.2014) (citing Iqbal, 556 U.S. 662 at 678).  The question is whether Plaintiffs' Complaint meets the liberal pleading standard under Civil Rule 8: that the Complaint sets forth "a short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Pro. 8(a)(2).

## III.  FACTUAL ALLEGATIONS

Wal-Mart promises its customers, through return policies, that the customers may return products within a certain amount of time and receive a refund.  (Complaint (Doc.1) at ¶12-13, 15, 16-20 and 23 (Walmart), 21-22 (online), 24-30 (Sam's Club); Answer (Doc.12) at 5 ("Defendant admits there are return policies for purchases made at U.S. Wal-Mart stores, Walmart.com, and Sam's Club stores and that customers may, in accordance with the return policies, return merchandise for a refund.").)     (Plaintiffs' Complaint at ¶20 contains a representative example of a return policy placard displayed to Walmart shoppers, which Wal-Mart admits "appears to be a true and accurate copy of a return-policy notice in use during the year referenced therein."  Answer (Doc.12) at 8.)

There is a single, nationwide return policy for Walmart stores, another for Cam's Club stores, and provisions regarding online sales.  (Complaint (Doc.1) at ¶16 (Walmart), 19-22 (online), 24 (Sam's Club); Answer (Doc.12) at 6.)

4

The return policies do not limit returns to defective goods or goods under warranty: customers can return goods within the return period for any reason (provided they have a receipt).  (Complaint (Doc.1) at ¶23, 30.)  Wal-Mart permits customers to return goods to any of its respective store locations.  (Id. at ¶15; Answer (Doc.12) at 6 ("Defendant states the return policies allow customers to return goods purchased at one Wal-Mart store to another Wal-Mart store or from one Sam's Club store to another Sam's Club store.").)

When Wal-Mart customers return goods, Wal-Mart does not refund the amount the customer paid as required under the return policy contract.  Instead, Wal-Mart recalculates the price of the goods as if they were purchased at the return store. (Complaint (Doc.1) at ¶31-32.)   If the sales tax rate applicable to the return store is lower than the sales tax rate applicable to the purchase store, Wal-Mart refunds the lower, re-calculated purchase price to the customer, and keeps the difference and the goods.  (Id.)[2]

---

[2] Wal-Mart frames this as its "miscalculation" of sales tax.  (Motion (Doc.11) at 5 of 15 ("Wal-Mart or Sam's Club may have miscalculated the amount of sales tax to be refunded.").)  This is likely to set up the argument, later, that the proper remedy would be to seek repayment of the remaining "sales tax" from a state taxing authority.  The damages are not improperly collected sale taxes, but Wal-Mart's failure to refund the full amount paid.  (Complaint (Doc.1) at ¶33 ("Plaintiffs do not allege any claims regarding Wal-Mart's application, calculation, collection, or remittance to a state entity, of sales tax at the time of the initial sale.")  Because the sales transaction was undone, there are no sales taxes owed.  Nor does Wal-Mart's describing the amount it failed to refund as "sales tax" transform its obligations, or insulate it from liability, for failing to refund the amount paid.  How Wal-Mart squares its obligations with regard to the taxing authorities is not at issue.

**IV.** **LEGAL ANALYSIS**

    A.    THE UNIFORM COMMERCIAL CODE DOES NOT APPLY TO WAL-MART'S WITHOUT-CAUSE RETURN POLICY.

Wal-Mart does not dispute it allows customers of its Walmart and Sam's Clubs stores to return products within a set amount of time, without regard to whether the products are defective, for a "refund."  Plaintiffs exercised their contractual right to return goods because the Plaintiffs decide to do so, a right conferred by Wal-Mart's own return policies.

The Uniform Commercial Code does not address such a no-defect return policy.  Under the Uniform Commercial Code, after a seller tenders goods, a buyer must either accept or reject the goods based on whether the goods conform to the promised description (or, despite their non-conformance, the buyer chooses to accept non-conforming goods).  See Ohio Rev. Code §1302.64 (UCC 2-606) (acceptance defined as notifying seller the goods are conforming or accepted despite non-conformity, or not properly rejecting goods); §1302.65(B) ("Acceptance of goods by the buyer precludes rejection of the goods accepted. . . .").  Goods "conform to the contract when they are in accordance with the obligations under the contract."  Ohio Rev. Code §1302.01(A)(12).

A buyer may recover "so much of the price as has been paid" (that is, a full refund) when the buyer has "rightfully" rejected tendered goods, or "justifiably revokes acceptance" of already-accepted goods.  Ohio Rev. Code §1302.85(A) (UCC 2-711, Buyer's Remedies in General).  But buyers can **only** revoke acceptance of goods already accepted (that is, not rejected) where a "non-conformity substantially impairs its value" to the buyer (that is, a material breach of

6

warranty).   Ohio Rev. Code §1302.66 (UCC 2-608, Revocation of acceptance). (Although §1302.85 uses the word "breach" generally, a later part of the same section clarifies this is a "breach with respect to the goods accepted," not a breach of any contract term, period.  §1302.85(D).)

Plaintiffs' and the putative class members' transactions do not involve non-conforming goods: Wal-Mart's return policy does not require the goods to be non-conforming to entitle the customers to a refund.  Plaintiffs did not elect a remedy under the Uniform Commercial Code for tender of non-conforming goods.   As such, the Uniform Commercial Code should not apply on the return policy contracts (as opposed to the sales transaction regarding promises or warranties and whether the goods conform to them).

Under Ohio law, the Uniform Commercial Code "appl[ies] to transactions in goods" *unless* "the context otherwise requires."  Ohio Rev. Code §1302.02 (UCC 2-102).  This is such a context: the return policies create an obligation independent from the UCC's tender-accept-reject framework for transactions.  Wal-Mart's return policy refund obligation is an ancillary contract to the underlying sales transaction, which underlying transaction is governed by the UCC.  The Uniform Commercial Code on sales excludes from its scope "[r]emedies for breach of any obligation or promise collateral or ancillary to a contract for sale," which "are not impaired by the provisions of sections 1302.01 to 1302.98, inclusive, of the Revised Code." Ohio Rev. Code §1302.75 (UCC 2-701, collateral contracts).

Here, Wal-Mart's return policies do not require goods to be non-conforming to be returned.  The return policy refund remedy is therefore part of an ancillary contract, because this right to return is "not impaired by the provisions of" the UCC

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

7

on sales regarding conformity of goods.   The common law on breach of contract should apply.  <u>See, e.g.</u>,  <u>Pfaff v. Whole Foods Mkt. Group Inc.</u>, N.D.Ohio No. 109CV02954, 2010 WL 3834240 at *4 (Sept. 29, 2010) (certifying a breach of contract class action based on common law breach of contract, not the UCC, regarding failure to provide a 10% discount when selling beverage goods by the case).  As in <u>Pfaff</u>, where the claimed breach of contract has nothing to do with the conformity of the goods, but only to programming point of sale systems to shortchange customers on the price paid (or, here, refunded), the UCC is not applicable as a gap filler to the clear terms of the contract.  <u>Id.</u>

There is no pre-suit notice requirement under Ohio's common law breach of contract claim.  "A claim for breach of contract under Ohio law requires that a claimant prove: (1) a contract's existence; (2) plaintiff's performance under the contract; (3) defendant's failure to perform under the contract; and (4) damages resulting from defendant's failed performance."  <u>Smythe Cramer Co. v. Silva</u>, N.D.Ohio No. 1:13-CV-01403, 2013 WL 5739752 (Oct. 22, 2013) (citing <u>Savedoff v. Access Grp., Inc.</u>, 524 F.3d 754, 762 (6th Cir.2008)).

Plaintiffs alleged the existence of a contract obligating Wal-Mart to refund Plaintiffs the amount paid upon the return of goods with a receipt within a specified period of time.  Plaintiffs alleged performance (proper return of the goods), Wal-Mart's failure to perform (by not refunding the amount paid), and damages for the difference between what was paid and what was refunded.   The Complaint sets forth a viable claim not subject to dismissal under Civil Rule 12(b)(6).

8

B.    RETURNING GOODS UNDER WAL-MART'S RETURN POLICIES
      IS AT MOST A "REJECTION" UNDER THE UCC, WHICH DOES
      NOT REQUIRE PRE-SUIT NOTICE.

Even if the Uniform Commercial Code could be interpreted to apply to Wal-Mart's return policies, the Plaintiffs can only reasonably be deemed to have "rejected" the goods under the return policy.  Rejection does not require pre-suit notice of any breach with respect to the goods.

The Uniform Commercial Code permits buyers to reject goods "within a reasonable time after their delivery or tender."  Ohio Rev. Code §1302.61(A) (UCC 2-602).  Rejection is effective provided "the buyer seasonably notifies the seller" of the rejection.  Id.  Upon a rightful rejection, buyers have the right to "recover[ ] so much of the price as has been paid," but must not exercise ownership of the goods, and hold them for the seller until the seller can recover them. §1302.61(B).

Plaintiffs "seasonably notified" Wal-Mart of rejection by returning the goods to the store, pursuant to Wal-Mart's return policy terms.  (Even had Plaintiffs not provided notice of rejection by following Wal-Mart's return policies and physically returning the goods, the filing of a lawsuit to recover the purchase price would be sufficient notice of rejection under Ohio law. Kabco Equip. Specialists v. Budgetel, Inc., 2 Ohio App.3d 58, 61, 440 N.E.2d 611, 614 (10th Dist.1981) ("[T]he buyer's action in filing suit to recover the purchase price constituted an effective notice of non-acceptance or revocation of acceptance.").)

The inspection period is presumed to be "reasonable" because it was set by Wal-Mart in the return policies, as permitted by the Uniform Commercial Code. Ohio Rev. Code §1301.302(B) ("Whenever Chapter . . . 1302 of the Revised Code

9

requires an action to be taken within a reasonable time, a time that is not manifestly unreasonable may be fixed by agreement.").

Assuming the UCC governs the return transaction, the goods at issue were rightfully rejected.  Plaintiffs are entitled to "recover[ ] so much of the price as has been paid," just as set forth in the return policies.  Ohio Rev. Code §1302.61(B).  That is, Plaintiffs are entitled to a refund, just as Wal-Mart promised to provide in its return policies.

While Wal-Mart's return policies permit returning the goods without regard to whether they are "conforming" or not, the Uniform Commercial Code's default provisions provide that rejection of goods is "wrongful" where the seller tenders wholly conforming goods.  As explained by the Official Comments, if "the seller has made a tender which in all respects conforms to the contract, the buyer has a positive duty to accept and his failure to do so constitutes a "wrongful rejection" which gives the seller immediate remedies for breach."  Ohio Rev. Code §1302.61 (UCC 2-602), Official Comment 3.

Wal-Mart gave up its right to insist on acceptance of perfectly tendered goods by allowing returns without problems with the products.  Wal-Mart gave its Walmart and Sam's Club store customers the right to reject goods without regard to whether the goods are conforming as an inducement to shop there.  Wal-Mart benefitted under this arrangement by having rejected goods returned to it, an obligation a buyer does not have under the UCC.  But Wal-Mart failed to provide the repayment of "so much of the price as has been paid" required by both the Uniform Commercial Code and its own return policies to many of its customers.

There is no requirement that any buyer, including the Plaintiffs or the putative class members, provide any pre-suit notice of any breach for goods rightfully rejected—either under the Uniform Commercial Code, or Wal-Mart's return policies.  There is only a "seasonal notification" of the rejection required, which Plaintiffs and class members met by bringing the goods back to Wal-Mart's stores, under the return policies, for a refund.  Because lack of pre-suit notice was Wal-Mart's only basis for its Motion to Dismiss, the Motion must be denied.

C.  <u>THE UCC'S BREACH OF WARRANTY PROVISIONS DO NOT APPLY TO WAL-MART'S RETURN AND REFUND TERMS OR PLAINTIFFS' CLAIMS.</u>

Wal-Mart must argue that its customers did not reject the goods after inspection as permitted by its return policies, but instead "accepted" the goods, because the Uniform Commercial Code only requires notice of a breach of warranty regarding accepted goods.  Ohio Rev. Code §1302.65(C) and (C)(1) (notice provision only applies "where a tender has been accepted"); Motion (Doc.11) at 9 of 15 (citing Ohio Rev. Code §1302.65(C)(1) as the basis for Wal-Mart's "failure to provide notice" argument).  Wal-Mart's assertion that the Plaintiffs "accepted" the goods does not comport with the UCC, policies underlying the notice requirement, or its own return policies.

Walmart and Sam's Club store customers never "accept" goods they return under Wal-Mart's return policies, because Wal-Mart provides an inspection period and right to reject (return) or accept (keep) the goods.  The Uniform Commercial Code requires such an inspection period as part of its definition of "acceptance," under which a buyer: (1) "after a ***reasonable opportunity to inspect*** the goods ***signifies to the seller that the goods are conforming*** or that he will take or

11

retain them in spite of their non-conformity"; (2) "**fails to make an effective rejection**" under Revised Code 1302.61(A) (but "such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them"); or (3) "does any act inconsistent with the seller's ownership." §1302.64 (UCC 2-606).

Here, Plaintiffs never signified the goods were conforming or non-conforming: they bought the goods, took some period of time for inspection as permitted by Wal-Mart, and then returned them without regard to their conformity as permitted by Wal-Mart's policies.  The rejection was effective—and therefore, cannot be an acceptance—because the Plaintiffs "seasonally notified" Wal-Mart of the rejection by returning the goods within the reasonable time set by Wal-Mart, and did not exercise ownership over the goods by returning them.  Ohio Rev. Code §1302.61(A) (UCC 2-602).   Finally, there was no "act inconsistent with the seller's ownership": the Plaintiffs' claims are for properly returned goods, not goods returned in a damaged condition or sold to another party first.

That the Plaintiffs pay for the goods at the time of the sale does not mean they accepted the goods.  The Uniform Commercial Code specifically provides that, "[w]here the contract requires payment before inspection," such "[p]ayment does not constitute an acceptance of goods or impair the buyer's right to inspect or any of the buyer's remedies."  Ohio Rev. Code §1302.56 (UCC 2-512).  Ohio courts recognize that under the UCC, delivery of goods, payment for the goods, even possession for a reasonable time, does not create acceptance:

> Delivery of goods does not, by itself, constitute acceptance. Acceptance is only tangentially related to possession. Normally, the buyer will have possessed the goods for some time before the buyer accepts them. Acceptance does not occur unless the buyer has had

12

a reasonable time to inspect the goods and accept them despite any nonconformity, the buyer fails to seasonably reject them under R.C. 1302.60 and 1302.61, or the buyer does any act inconsistent with the seller's ownership.

Zion Temple First Pentecostal Church of Cincinnati, Inc. v. Brighter Day Bookstore & Gifts, 2004-Ohio-5499 ¶12, 970 N.E.2d 441, 444 (1st App. Dist.); see also, Furlong v. Alpha Chi Omega Sorority, 73 Ohio Misc.2d 26, 36, 657 N.E.2d 866, 872, 1993 WL 800845 at *36 (M.C.1993) ("The mere fact that AXO took physical possession of the sweaters does not, by itself, mean that AXO legally 'accepted' them.").

Wal-Mart's argument that its customers accepted the goods at the time of sale becomes absurd when carried to its logical conclusion.  If the products were "accepted," Wal-Mart's customers must provide notice of (and prove a claim for) a "breach with respect to the goods accepted."  §1302.85(D).  This section contemplates a breach of warranty claim, with notice to the seller to give them a chance to cure the defect.  Of what "breach with respect to the goods" would Wal-Mart's customers provide notice?  There was no such breach regarding the goods: the products did not have to be defective under the return policy (and if they were, different contracts, such as warranties, would come into play).  What would Wal-Mart have done to cure this "breach with respect to the goods," for goods entirely conforming?  It does not make sense to apply a breach of warranty right to notice and cure provision to a return policy that involves no problem with the goods.

Taking Wal-Mart's position that the goods were "accepted" at the time of sale even further, the only way the Plaintiffs could revoke acceptance—and be entitled to the refund the return policies provide—is if there was a "non-conformity"

13

in the goods that "substantially impairs its value to [the buyer]." Ohio Rev. Code §1302.66(A) (UCC 2-608) (revocation of acceptance).  Even then, the Plaintiffs must prove they accepted the goods either: (1) "on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured"; or (2) "without discovery of such non-conformity if [the buyer's] acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."  Id. at (A)(1) and (2).  It makes no sense to force the return transactions into this accept-and-then-revoke-acceptance mold, because there is no claimed breach of warranty.  Wal-Mart may wish to take advantage of the Uniform Commercial Code requirements with regard to accepted goods, but that is not the refund terms Wal-Mart wrote.

Predictably, the cases Wal-Mart cites all involve problems with the products themselves, not a retailer failing to refund the amount paid. See, e.g., Lincoln Elec. Co. v. Technitrol, Inc., 718 F.Supp.2d 876, 877 (N.D. Ohio 2010) ("Plaintiff alleges [Defendant] breached express warranties in the design and manufacture of transformers . . . because the transformers failed to conform to the design specifications. . . ."); St. Clair v. Kroger Co., 581 F.Supp.2d 896, 898 (N.D. Ohio 2008) (claims for "fraudulent misrepresentation and breach of warranty" related to mislabeled beef products); Huntington Natl. Bank v. Findlay Machine & Tool, Inc., 2012-Ohio-748 ¶9 (Ohio 3rd App. Dist.) (poorly constructed conveying equipment); Jones v. Davenport, 2nd Dist. No. 18162, 2001 WL 62513 (Jan. 26, 2001) (brick for home addition "was not the color that he ordered, and the few that were the correct color contrast and diminish the appearance of" plaintiff's house).

14

Plaintiffs make no such claim: the products were rejected (or "returned") without regard to any warranty claim or promise, within the period Wal-Mart provided for inspection. Plaintiffs did exactly what Wal-Mart told them to do: return the goods within a set period of time, with a receipt, for a refund.  They are entitled to "recover[ ] so much of the price as has been paid" upon this proper rejection, without regard to any notification of "breach."  Ohio Rev. Code §1302.85(A).

    D.    <u>PRE-SUIT NOTICE WAS PROVIDED, AND ADEQUACY OF THE NOTICE CANNOT BE DECIDED ON A MOTION TO DISMISS AS IT PRESENTS FACTUAL ISSUES.</u>

Even under its incorrect analysis of the transaction, Mr. Brandewie alleged direct, in-store notice of failing to refund the amount paid, including to an assistant manager:

> 35. On June 28, 2012, Plaintiff Shaun Brandewie purchased a Netgear computer router from the Walmart store located at 6594 Mayfield Road, Mayfield Heights, Ohio 44124 (Store # 5083), for which the amount paid was $37.68.

> 36. On June 29, 2012, Plaintiff Shaun Brandewie returned the Netgear computer router to the Walmart store located at 3750 W. Market St., Fairlawn, Ohio 44333 (Store # 1895), for which Wal-Mart refunded him $37.24, or $0.44 less than the amount paid. ***Despite his protests to Wal-Mart employees, including an assistant manager, Wal-Mart would not refund the entire amount paid.***

> 37. On June 28, 2012, Plaintiff Shaun Brandewie purchased a compact fluorescent bulb, among other products, from the Walmart store located at 6594 Mayfield Road, Mayfield Heights, Ohio 44124 (Store # 5083), for which the amount paid was $16.64.

> 38. On June 29, 2012, Plaintiff Shaun Brandewie returned the compact fluorescent bulb to the Walmart store located at 3750 W. Market St., Fairlawn, Ohio 44333 (Store # 1895), for which Wal-Mart refunded him $16.44, or $0.20 less than the amount paid. ***Despite***

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

> *his protests to Wal-Mart employees, including an assistant*
> *manager, Wal-Mart would not refund the entire amount paid.*

(Complaint, Doc.1, at 10.)  Wal-Mart describes these allegations as "boilerplate" despite the specific facts alleged, including the nature of the complaint (protestations regarding the failure to refund the amount paid), to whom they were made (Wal-Mart employees, including an assistant manager), and when (on June 29).  (Doc.11 at 8.)  Wal-Mart does not explain how this notice could fail, as a matter of law, at the pleading stage.  (Id.)

The adequacy of the alleged notice should not be decided as a matter of law under the "well-established rule that the 'determination of a reasonable time and the adequacy of notice to the seller are ordinarily questions of fact.'"  Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co., 42 Ohio St.3d 40, 51-52, 537 N.E.2d 624, 636 (1989) (quoting Kabco Equip. Specialists v. Budgetel, Inc. 2 Ohio App.3d 58, 61, 440 N.E.2d 611 (Ohio Ct.App.1981)).  Ohio federal courts addressing this issue have held that notice is sufficiently pled even where the claims of notice are "often unspecific" about "whom she contacted, how she did so, or when she did."  Allen v. Andersen Windows, Inc., 913 F.Supp.2d 490, 512 (S.D. Ohio 2012).  Such shortcomings are "not fatal to the notion that she has pleaded notice. The reasonableness and adequacy of notice . . . is an issue for another day; for now, [Plaintiff] has pleaded enough to escape dismissal on this ground."  Id. (citing Chemtrol Adhesives, 42 Ohio St.3d at 51; Kabco Equip., 2 Ohio App.3d at 61).

Notice requires no specific "requisite factual details" as Wal-Mart contends. (Doc.11 at 11, citing St. Clair v. Kroger Co., 581 F. Supp. 2d 896, 903 (N.D. Ohio 2008).)  As Judge Carr held, six years after writing the St. Clair opinion, "notice to

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

the seller 'may be sufficient . . . despite the fact that the notice does not specifically allege a breach of the contract. Moreover . . . the statute [does not] exclude the possibility that notice may be inferred' from all relevant circumstances." <u>Coupled Products, LLC v. Modern Machine Tool Co.</u>, N.D.Ohio No. 3:12CV2727, 2014 WL 293659 at *10 (Jan. 23, 2014) (quoting <u>Chemtrol Adhesives</u>, 42 Ohio St.3d at 54, alterations in original).  <u>St. Clair</u> dealt with a complaint that alleged no notice, not a decision that alleged notice was inadequate as a matter of law.  Wal-Mart cites no case dismissing a **complaint** for failure to provide **adequate** notice on a motion to dismiss.

Nor is Wal-Mart's argument that filing a lawsuit cannot provide adequate notice under the Uniform Commercial Code correct.  The Ohio Supreme Court specifically rejected a *per se* rule that a complaint cannot serve as notice of a breach of warranty in the seminal <u>Chemtrol</u> case. <u>Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.</u>, 42 Ohio St.3d 40, 54, 537 N.E.2d 624, 638 (1989) (Despite some courts having held that "the filing of the complaint cannot constitute adequate notice. . . . [w]e decline to adopt such an absolute rule, as we believe in a proper case the filing of a civil complaint could serve as notice of breach.")  The same case Wal-Mart cites for the contention there is such a *per se* rule, <u>Lincoln Electric</u>, acknowledged there is not: "[t]he Court recognizes that under <u>Chemtrol</u>, Ohio does not have a per se rule that the filing of a complaint cannot constitute notice under § 1302.65(C)(1), but the Ohio Supreme Court was clear that a complaint could only constitute notice in 'a proper case.'" <u>Lincoln Elec. Co. v. Technitrol, Inc.</u>, 718 F.Supp.2d 876, 883 (N.D.Ohio 2010).  Mr. Brandewie gave notice that he was not refunded the amount he had paid and was rebuffed, even

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

17

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

after escalating to store management.  Complaining would solve nothing.  Given this is a class action involving potentially millions of dollars in tiny breaches of the return policy contracts, this would be a "proper case" to find that the lawsuit itself served as notice.

This is the true reason Wal-Mart must make the argument that its failure to provide a full refund is an acceptance and revocation under the Uniform Commercial Code, despite how strained the analysis is, and that a complaint cannot provide notice of the "breach": Wal-Mart hopes to defeat not just an individual claim, but apply the notice requirement to the entire class to derail certification due to individual issues.  It also explains why Wal-Mart has not cited to a non-binding district court case from 2009 in which an Illinois district court dismissed a complaint alleging the same wrongful behavior. Whitwell v. Wal-Mart Stores, Inc., S.D.Ill. No. CIV 09-513-GPM, 2009 WL 4894575 (Dec. 11, 2009) (refunding less than the amount paid when goods returned to a store in lower sales tax rate jurisdiction).  Wal-Mart was on notice, not just because Mr. Brandewie told them about the issue, and not just because Plaintiffs filed the instant lawsuit, but because an unrelated but largely identical lawsuit was filed in 2009.[3]

---

[3] Wal-Mart also implicitly recognizes that the benefit of Whitwell to Wal-Mart's position is low: the Whitwell court concluded the goods were "accepted" merely because the plaintiff paid for them and used them, contrary to the UCC and related case law.  Whitwell, 2009 WL 4894575  at *5 ("Here there can be little serious question that Whitwell accepted the DVD player that he purchased from Wal–Mart, given that he paid the requested price after tender, took the DVD player home, and presumably used it.").  The Whitwell plaintiffs did not allege notice was provided. Id. at *6.

E.    THIS IS NOT A VOLUNTARY PAYMENT DOCTRINE CASE.

Wal-Mart makes a passing reference to Ohio's voluntary payment doctrine as supporting its position that Plaintiffs should have provided pre-suit notice of Wal-Mart's providing less than the amount paid as a refund.  (Motion (Doc.11) at 12 of 15.)  Wal-Mart wants to have it both ways: Plaintiffs (or any member of the putative class action, presumably) must provide notice that Wal-Mart stiffed them, but if they knew that Wal-Mart stiffed them, then accepting the inadequate refund renders a breach of contract claim void because they voluntarily accepted less than the full refund under the voluntary payment doctrine.  While perhaps a clever legal argument, it does not comport with Ohio law or Wal-Mart's obligations under the return policies at issue.

---

Wal-Mart likely did not want to cite the Whitwell decision because the Seventh Circuit, reviewing an unrelated decision in the same case, held that Wal-Mart could not credibly claim its shortchanging customers was really an action to recover sales tax, more properly directed against the State (an argument Wal-Mart will make in this case):

> The district court didn't address the oddity of viewing a suit against Wal–Mart as a challenge to taxation because it believed that ordering Wal–Mart to give Whitwell and others full refunds—including the sales tax they paid—would amount to taking money out of state coffers, and whether a suit would operate to reduce the flow of state tax revenue is one of the factors considered in *Hibbs. See* 542 U.S. at 106. But by returning the item, Whitwell reversed the sale, and so the state had no claim on any sales tax derived from the exchange. How Wal–Mart settles with the Collinsville and Glen Carbon tax authorities (one of whom had a sale, and the other, a return, at different tax rates) is another matter, but that issue is between the local governments and Wal–Mart.

In re Wal-Mart Stores, Inc., 7th Cir. No. 09-8039, 2009 WL 7823752 *2 (Nov. 12, 2009).

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

The Voluntary Payment Doctrine only applies to money paid, not money owed.  <u>Salling v. Budget Rent-A-Car Systems, Inc.</u>, 672 F.3d 442, 444-45 (6th Cir.2012).  The Plaintiffs claim Wal-Mart failed to pay them, not that the Plaintiffs paid a fee they did not owe.  The doctrine is inapplicable on its face.  This is an action to recover the remainder of the amount owed—and not paid—by Wal-Mart.  Notice was provided, to no effect.  To hold that Wal-Mart can systematically under-pay its customers has no basis in this or any other legal doctrine.

**V.**     **<u>CONCLUSION</u>**

Under Wal-Mart's own contractual terms, the Plaintiffs rightfully rejected goods they did not want by returning them within the allowed period of time.   They are entitled to the amount they paid—not some lower figure Wal-Mart gave them.  The only basis for the Motion to Dismiss is failing to provide a notice that was not required, and  was in fact provided.  The Motion should be denied.

*/s/ William B. Eadie*
DENNIS R. LANSDOWNE (OH#: 0026036)
STUART E. SCOTT (OH#: 0064834)
NICHOLAS A. DICELLO (OH#: 0075745)
WILLIAM B. EADIE (OH#: 0085627)
DANIEL FRECH (OH#: 0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio  44114
(216) 696-3232 | (216) 696-3924 (FAX)
*dlansdowne @spanglaw.com*
*sscott @spanglaw.com*
*ndicello @spanglaw.com*
*weadie @spanglaw.com*
*dfrech @spanglaw.com*
www.spanglaw.com

***Lead Class Counsel for Plaintiffs***

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

DANIEL J. MYERS (OH# 0087909)
**MYERS LAW, LLC**
610 Skylight Office Tower
1660 West Second Street
Cleveland, Ohio  44113
P:  (216) 236-8202
F:  (216) 674-1696
*DMyers@MyersLawLLC.com*

***Counsel for Plaintiffs***

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

## <u>LOCAL CIVIL RULE 7.1(F) CERTIFICATION</u>

This Court recommended this case, pursuant to LR 16.3(a), and subject to further discussion at the CMC, to the Standard Track. (Doc.7.)  I certify that this memorandum adheres to the page limitations set forth in LR 7.1(f) for the Standard Track and unassigned cases.

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

## CERTIFICATE OF SERVICE

I certify that on August 18, 2014, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems by:

> Karen L. Giffen, Esq.
> Giffen & Kaminski, LLC
> 1300 East Ninth Street
> Suite 1600
> Cleveland, Ohio 44114
>
> and
>
> M. Scott Incerto (*pro hac vice*)
> Peter A. Stokes (*pro hac vice*)
> John Yslas (*pro hac vice*)
> Fulbright & Jaworski LLP
> 98 San Jacinto Blvd., Suite 1100
> Austin, TX 78701
> Telephone: (512) 474-5201
> Facsimile: (512) 36-4598
> scott.incerto@nortonrosefulbright.com
> peter.stokes@nortonrosefulbright.com
> john.yslas@nortonrosefulbright.com

***Counsel for Defendant Wal-Mart Stores, Inc.***

> /s/ William B. Eadie
> _____
> DENNIS R. LANSDOWNE (oh#: 0026036)
> STUART E. SCOTT (OH#: 0064834)
> NICHOLAS A. DICELLO (OH#: 0075745)
> WILLIAM B. EADIE (OH#: 0085627)
> DANIEL FRECH (OH#: 0082737)
> **SPANGENBERG SHIBLEY & LIBER LLP**
> www.spanglaw.com
>
> ***One of the Counsel for Plaintiffs***

23

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO