UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAUN BRANDEWIE, *et al.*, | ) | CASE NO. 1:14-CV-965 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE JAMES S. GWIN |
| vs. | ) | |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
ATTORNEYS' FEES AND EXPENSES**

This matter comes before the Court on Plaintiffs' Motion for Final Approval of Settlement (Doc.#: 81) (incorporating their Motion for Preliminary Approval, Doc.#: 73), and Motion for Approval of Attorneys' Fees and Expenses (Doc.#: 79). Having reviewed the briefing on these Motions, the proposed Settlement Agreement (Doc.#: 73-1) and other attachments to the Motion for Preliminary Approval, the arguments and evidence from the July 15, 2015 Preliminary Approval Hearing and the December 17, 2015 Final Approval Hearing, and the Objection from Mr. Dylan Thomas (Doc.#: 80), the Court GRANTS the Motion for Final Approval of the Settlement and Motion for Approval of Attorneys' Fees and Expenses, as set forth more fully below.[1]

---

[1] All defined terms used in this Order have the same meanings as set forth in the Settlement Agreement, Doc.#: 73-1, unless otherwise defined.

**I.      INTRODUCTION**

After conducting a hearing on Plaintiffs' Motion for Preliminary Approval on July 15, 2015, the Court preliminarily approved the Settlement on July 16, 2015. (Doc.#: 75)

The Final Fairness Hearing took place on December 17, 2015.  Prior to the Hearing, the Court received Plaintiffs' Motion for Final Approval of Settlement (Doc.#: 81) and Motion for Approval of Attorneys' Fees and Expenses (Doc.#: 79).  The Motion for Final Approval included a declaration from Matthew Pohl of Class Action Administration, the Class Administrator, regarding compliance with the Preliminary Approval Order and Notice Plan.  Notice was also sent in accordance with CAFA.

**II.     FINDINGS OF FACT AND LAW**

    **A.     JURISDICTION**

The Court finds it has jurisdiction over the subject matter of this action, all Settlement Class Members, and the Defendant.

    **B.     SETTLEMENT CLASS CERTIFICATION**

Before granting final approval of a settlement, the Court should determine that the proposed settlement class satisfies the requirements of Rule 23 for settlement.  Fed. R. Civ. P. 23; In re Polyurethane Foam Antitrust Litigation, No. 1:10 MD 2196, 2015 WL 7348208, *3 (N.D. Ohio Nov. 19, 2015).  This Court previously certified the settlement class on a preliminary basis.  (Doc.#: 75 at 2.)   For the reasons set forth in Plaintiffs' Motion for Final Approval of Settlement, the Court concludes the Settlement Class satisfies Rule 23 numerosity, commonality, typicality, adequacy, predominance, and superiority requirements, and thereby certifies the Settlement Class for settlement purposes only.

C. THE NOTICE PROVIDED WAS ADEQUATE.

In accordance with Rule 23(d) of the Federal Rules of Civil Procedure and the requirements of due process, all members of the Settlement Class have been given proper and adequate notice of the Settlement. The Court finds that the Notice and notice methodology implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Settlement Approval Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law.

D. THE SETTLEMENT IS APPROVED

The Settlement Agreement in this action warrants final approval pursuant to Rule 23(e). "Several factors guide the inquiry [of whether a class settlement is fair, reasonable, and adequate]: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007). In the instant case, all these factors weigh in favor of approval.

1. THERE IS NO RISK OF FRAUD OR COLLUSION

There is a "presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands," and nothing remotely suggesting otherwise here.  <u>Internatl. Union, United Auto., Aerospace, & Agr. Implement Workers of America v. Gen. Motors Corp.</u>, 497 F.3d 615, 628 (6th Cir.2007).  Because the settlement is the result of arm's length negotiations between experienced counsel, there is no risk of fraud or collusion.  This Court is aware of the vigorous representation by counsel for Wal-Mart and Plaintiffs from the extensive briefing and in-chambers conferences.  The settlement was reached between experienced counsel in view of the extensive risks on both sides of proceeding to trial.  Under such circumstances, it "is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator."  <u>Swigart v. Fifth Third Bank</u>, S.D.Ohio No. 1:11-CV-88, 2014 WL 3447947, *2 (July 11, 2014).

2. THE COMPLEXITY, EXPENSE, AND LENGTHY NATURE OF THE LITIGATION SUPPORTS APPROVING SETTLEMENT.

This litigation involved complex issues, including a large volume of e-discovery and data management, national claims across 50 states' laws, sales tax processing and related administrative bars to recovery. All of these issues were managed simultaneously, while counsel prepared discovery, conducted depositions, and prepared class certification.  "[A] lengthy trial, post-trial motions, and appeals from the jury's verdict would have piled on fees and costs, and would have delayed recovery (if any) by class members." <u>In re Polyurethane Foam Antitrust Litigation</u>, N.D.Ohio No. 1:10 MD

2196, 2015 WL 7348208, *4 (Nov. 19, 2015).  Settlement at this time benefits the Parties, including the Settlement Class Members.

      3.     THE PARTIES ENGAGED IN EXTENSIVE DISCOVERY DEMONSTRATING THE RESULT IS FAIR, REASONABLE, AND ADEQUATE.

The Parties engaged in extensive discovery, including obtaining voluminous documents and data and taking depositions of both named Plaintiffs and multiple corporate witnesses covering a broad variety of topics.

Following this discovery and motion practice, the Parties engaged in mediation before retired federal judge Layn Philips, where the analyzed data on the scope of the potential damages in the case formed a basis for negotiation.  "All of this discovery matters for settlement purposes because it provides Direct Purchasers and the settling Defendants a clear picture of the relative merits of claims and defenses. The parties entered into these settlements with full view of the evidentiary record to assess the class claims." In re Polyurethane Foam Antitrust Litigation, N.D.Ohio No. 1:10 MD 2196, 2015 WL 7348208, *4 (Nov. 19, 2015) (quotation omitted).

      4.     PLAINTIFFS FACED THE RISK OF FAILURE ON THE MERITS.

The extensive jurisdictional challenges and substantive challenge as to whether sales tax could form the basis of damages in this case demonstrate the risk of failure on the merits Plaintiffs faced.  In determining whether a class action settlement is fair and reasonable, the Court should "respect the parties' compromise and . . . not substitute his or her judgment for that of the litigants and their counsel," because "there is a range of reasonableness with respect to a settlement-a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion." IUE-CWA v. Gen. Motors Corp., 238 F.R.D. 583, 594 (E.D.Mich.2006) (internal quotation omitted).

> 5. THE OPINIONS OF CLASS COUNSEL AND CLASS REPRESENTATIVES FAVOR SETTLEMENT.

The Court gives significant weight to the opinion of Class Counsel that the settlements include fair, reasonable, and adequate compensation for a release of the class claims based on Class Counsel's extensive experience litigating these types of class actions and other complex litigation. In the absence of evidence of collusion, the "court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir.1983). Where, as here, the "Court appointed class counsel after thorough review of his credentials and abilities," the "Class Counsel's judgment that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" Date v. Sony Elecs., Inc., 2013 WL 3945981, *9 (E.D. Mich. July 31, 2013) (quotation omitted).

> 6. ABSENT CLASS MEMBERS DO NOT CHALLENGE THE FAIRNESS, REASONABLENESS, OR ADEQUACY OF THE SETTLEMENT.

There has only been one objection filed, which did not challenge the fairness, reasonableness, or adequacy of the settlement itself. (Doc.#: 80 (objecting only to the objection process, the idea of *cy pres* in general, and attorney fees).) The objections raised as to the objection process requiring objectors to submit receipts are not well taken for the reasons set forth in Plaintiffs' Motion for Final Approval. The lack of absent class member challenges to the fairness, reasonableness, or adequacy of the settlement overall speaks to the value of the settlement achieved.

E. CY PRES DISTRIBUTION

The Court finds that *cy pres* distribution of all remaining funds after the payment of Class Members is appropriate, furthers the public interest, and furthers the interest of non-participating Settlement Class Members by ensuring the full settlement funds are paid by Defendants in class action settlements. See, e.g., Green v. Dressman Benzinger Lavelle, PSC, S.D.Ohio No. 1:14-CV-00142-SJD, 2015 WL 223764, *3 (Jan. 16, 2015) (Approved settlement where all unclaimed funds remitted to *cy pres* recipient Legal Aid Society of Cincinnati); Stinson v. Delta Mgt. Assoc., Inc., 302 F.R.D. 160, 165-66 (S.D.Ohio 2014) (remainder to *cy pres* recipient legal assistance foundation); Kritzer v. Safelite Solutions, LLC, No. 2:10–cv–729, 2012 WL 1945144, at *10 (S.D.Ohio May 30, 2012) (approving distribution of uncashed settlement checks to *cy pres* beneficiaries); Roberts v. Shermeta, Adams & Von Allmen, P.C., 2015 WL 1401352, *2 (W.D. M.I. Mar. 26, 2015) (*cy pres* recipient National Consumer Law Center).

The Court approves the following recipient, as agreed by the Parties, for *cy pres* distribution of remaining funds: National Consumer Law Center. This recipient will further the interest of absent Settlement Class Members.

F. THE ATTORNEYS' FEES AND EXPENSES ARE REASONABLE.

The settlement contemplates a payment up to $1,750,000 from the Class Settlement Amount for Attorneys' Fees and Expenses, from which the Plaintiffs' incentive payments will also be paid. Wal-Mart "acknowledges Class Counsel's role as a substantial catalyst in Wal-Mart's agreeing to provide the Programmatic [injunctive] Relief." (Settlement Agreement (Exhibit 1) §6.3.2.) The Court finds the $1,750,000

payment for Attorneys' Fees and Expenses, from which the Plaintiffs' incentive payments will also be paid, is reasonable for the reasons set forth below.

The Court analyzes the fee petition first under a common fund, percentage-of-the-fund analysis.  The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," Boeing C. v. Van Gemert, 444 U.S. 472, 478 (1980), which reasonable fee may be based "on a percentage of the fund bestowed to the class," Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984).

This Court may award fees on a percentage-of-the-fund method, which "has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir.1993); see also Dillworth v. Case Farms Processing, Inc., N.D.Ohio No. 5:08-CV-1694, 2010 WL 776933, *7 (Mar. 8, 2010).  It also rewards attorneys for the results achieved, versus time spent.  Given that "one of the primary determinants of the quality of work performed is the result obtained," and "the most critical factor in determining a reasonable fee is the result achieved by counsel," Rawlings, 9 F.3d at 517 (6th Cir.1993), this is a substantial benefit.

In considering percentage-of-the-fund requests, "a district court may consider: '(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to

maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'" In re Polyurethane Foam Antitrust Litigation, 2015 WL 1639269 at *3 (quoting Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir.1996)). These factors weigh in favor of approving the settlement.

1. VALUE OF THE BENEFIT TO THE PLAINTIFF CLASS.

The value of the benefit rendered to the settlement class is the $5,000,000 monetary settlement, plus the value of the "programmatic" injunctive relief under which Wal-Mart agrees to correct the problem and maintain the new system for a period of three years. The settlement period covers four years prior to the Complaint, or $1,250,000 per year. Using that valuation, the three years of injunctive relief brings the total value to $8,750,000—$5,000,000 for the claim period, and $3,750,000 for the injunctive period. The programmatic relief is likely worth much more, however, as it is unlikely Wal-Mart will reverse course in three years and undo the fix.

The $1,750,000 in fees—ignoring this covers expenses and incentive payments, too—represents only a 20% fee. Even ignoring the injunctive relief, the request represents a 35% fee, still well within the range of acceptable percent-of-the-fund fee petitions. Swigart v. Fifth Third Bank, S.D.Ohio No. 1:11-CV-88, 2014 WL 3447947, *7 (July 11, 2014) ("An award of 33% of the total settlement fund"—before expenses—"is well within the range of fees requested in class and collective actions in Ohio federal district courts."); In re Southern Ohio Corr. Facility, 173 F.R.D. 205, 218 (S.D. Ohio 1997), rev'd on other grounds, 24 F. App'x 520 (6th Cir. 2001) (requested amount of 34% of the total common fund was within the range of reasonableness); Kritzer v. Safelite Solutions, LLC, S.D.Ohio No. 2:10-CV-0729, 2012 WL 1945144, *9 (May 30,

2012) (approving attorneys' fees, including expenses, representing "nearly 52 percent of the total recovery from Defendants."); Brotherton v. Cleveland, 141 F.Supp.2d 907, 913 (S.D.Ohio 2001) (noting "range of reasonableness" of between 20% to 50% of common fund); Dillworth v. Case Farms Processing, Inc., N.D.Ohio No. 5:08-CV-1694, 2010 WL 776933, *8 (Mar. 8, 2010) (33% contingency fee approved).

### 2. WHETHER THE SERVICES WERE UNDERTAKEN ON A CONTINGENT FEE BASIS.

Class Counsel undertook this representation on a purely contingency-fee basis, shouldering the entire risk of litigation, with an agreement authorizing a 40% attorney's fee portion, plus expenses, of individual recovery. Class Counsel has incurred over $80,000 in expenses in this case to date, all with the possibility of no recovery in the face of multiple dispositive motions. That Class Counsel pursued this small-claim, high-risk class action on a contingency basis weighs in favor of the proposed amount.

### 3. SOCIETY'S STAKE IN REWARDING ATTORNEYS WHO PRODUCE SUCH BENEFITS IN ORDER TO MAINTAIN AN INCENTIVE TO OTHERS.

For the same reason, society has a stake in rewarding attorneys who take on class action litigation on behalf of consumers who have tiny claims, against the largest retailer in the country.

### 4. THE COMPLEXITY OF THE LITIGATION.

This litigation involved complex issues, including e-discovery and big data processing, national claims involving 50 states' laws, sales tax processing, and related administrative bars to recovery. All of these issues were managed simultaneously, while counsel prepared discovery, conducted depositions, and prepared class certification.

     5.    THE PROFESSIONAL SKILL AND STANDING OF COUNSEL INVOLVED ON BOTH SIDES

Class Counsel, the Spangenberg Law Firm, is experienced, qualified, and well respected in the legal community, practicing throughout Ohio and the country. Reviewing the individual qualifications for the Spangenberg counsel working on this case set forth in the Declarations demonstrates the quality of representation at issue. (Doc.#: 42-4 through 42-9.) Class Counsel's performance in the case was exemplary. Class Counsel worked diligently, showed an eagerness to prosecute the case and engage in time-consuming discovery and extensive briefing, and well briefed the matters before the Court. Jenkins v. Hyundai Motor Fin. Co., No. C2-04-720, 2008 WL 781862, at *9 (S.D. Ohio Mar. 24, 2008).

Likewise, Wal-Mart engaged exemplary counsel, an international law firm, Norton Rose Fulbright, including M. Scott Incerto, its Head of Commercial Litigation for the United States, to head its litigation team, and separate settlement counsel, another international law firm, Greenberg Traurig, with a team headed by Brian Duffy, a president of the firm who served as Chair of the firm's 600-member Global Litigation Department. Both counsel signed off on the Settlement Agreement.

Where "the parties have negotiated an amount of fees and expenses which both the Defendant and the Plaintiffs agree is reasonable," the "negotiations took place at arms-length between sophisticated counsel on both sides of the table and under the supervision of [judges]," these "factors weigh strongly in favor of approval of the fee application." Lowther v. AK Steel Corp., S.D.Ohio No. 1:11-CV-877, 2012 WL 6676131, *4 (Dec. 21, 2012).

6. THE VALUE OF THE SERVICES ON AN HOURLY BASIS

Courts may employ an optional "cross check" on the percentage of the fund method using the Lodestar analysis. Class Counsel documented over 1,090 hours pursuing this case, which hours have grown since briefing closed. A comparable result without this early settlement would require thousands more hours. Based on the commensurate experience and billable rates for each attorney working on the case (which does not include paralegal time), Plaintiffs' Counsel have spent the equivalent of over $439,000 in billable hours on the case. Compared to the requested fees—$1,660,000 after deducting the $80,000 in expenses and $10,000 in incentive payments—this represents a multiplier for cross-check purposes of 3.78, well within the range of multipliers for a result such as this. See, e.g., In re Cardinal Health Inc. Sec. Litig., 528 F.Supp.2d 752, 767 (S.D.Ohio 2007) (lodestar multiplier of six); In re Rite Aid Corp. Sec. Litig., 146 F.Supp.2d 706, 736 n. 44 (E.D.Pa.2001) (fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); In re RJR Nabisco, 1992 WL 210138, at *5–6 (S.D.N.Y. Aug.24, 1992) (lodestar multiplier of 6); Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A., 778 F.2d 890, 894 (1st Cir.1985) (multiplier of six); In re Charter Communications, Inc., Sec. Litig., No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741, at *18 (E.D.Mo. June 30, 2005) (multiplier of 5.61 "falls within the range of multipliers found reasonable for cross-check purposes by courts in other similar actions, and is fully justified here given the effort required, the hurdles faced and overcome, and the results achieved.").

The Court rejects objector Jacobs's suggestion that the speed with which Class Counsel resolved the matter should weigh against the award. Reducing attorney fees

based on the time from filing to disposition is counterproductive: we should incentivize faster, not slower, resolution of cases.  Nor does it address the significant hours invested in the case and extensive work performed.

Given the substantial result in monetary and injunctive relief, the proposed fee allocation is reasonable and fair.

### III.  CONCLUSION

The Final Approval Motion and Motion for Attorneys' Fees and Expenses are hereby GRANTED, and the Settlement as set forth in the Agreement is hereby APPROVED as fair, reasonable, adequate, and in the public interest, and the terms of the Agreement are hereby determined to be fair, reasonable and adequate, for the exclusive benefit of the Settlement Class Members.  The Parties are directed to consummate the Agreement in accordance with its terms.

The Court APPROVES the Programmatic Relief and payment of the Class Settlement Amount in accordance with the terms of the Agreement.

The Court APPROVES payment of Class Representative Incentive Payments to Shaun Brandewie and John A. Newbrough III, in the amount of $5,000 to each.

The Court APPROVES payment of Attorneys' Fees and Litigation Expenses to Class Counsel in the amount of $1,750,000 in accordance with the terms of the Agreement.  The Court further finds that no attorneys have asserted any attorney liens as to the Attorneys' Fees and Litigation Expenses awarded by the Court.

The planned distribution of the Class Settlement Amount is hereby APPROVED as fair, adequate, and reasonable.  The Class Settlement Amount shall be distributed in

accordance with the terms of the Settlement Agreement and as otherwise ordered herein.

The Litigation is hereby DISMISSED WITH PREJUDICE and without costs to any Party, other than as specified in the Settlement Agreement and this Order.

In consideration of the Programmatic Relief and Class Settlement Amount provided under the Settlement Agreement, and for other good and valuable consideration, each of the Releasing Settlement Class Members shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Settlement Class Member Released Claims against Wal-Mart in accordance with Section 13 of the Settlement Agreement the terms of which section are incorporated herein by reference, shall have covenanted not to sue Wal-Mart with respect to all such Settlement Class Member Released Claims and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any such Settlement Class Member Released Claim against Wal-Mart.

This Judgment is the Final Judgment in the suit as to all Settlement Class Member Released Claims.

Without affecting the finality of this Judgment in any way, this Court retains jurisdiction over (a) implementation of the Settlement and the terms of the Settlement Agreement; (b) distribution of the Class Settlement Amount, the Class Representative Incentive Payments and the Attorneys' Fees and Litigation Expenses Amount; and (c) all other proceedings related to the implementation, interpretation, administration, consummation, and enforcement of the terms of the Settlement Agreement and the

Settlement, and the administration of Claims submitted by Settlement Class Members. The time to appeal from this Judgment shall commence upon its entry.

In the event that the Settlement Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, *nunc pro tunc*, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the status quo ante rights of Plaintiffs, Settlement Class Members, and Wal-Mart.

This Court finds that there is no just reason for delay and expressly directs Judgment and immediate entry by the Clerk of the Court.

**IT IS SO ORDERED.**


Date: <u>December 21, 2015</u>         s/   James S. Gwin
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE