UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAUN BRANDEWIE, *et al.*, | ) | CASE NO. 1:14-CV-965 |
| Plaintiffs, | ) ) ) | |
| vs. | ) | JUDGE JAMES S. GWIN |
| WAL-MART STORES, INC., | ) ) ) | |
| Defendant. | ) ) ) ) | |

**MOTION FOR A BOND TO SECURE PAYMENT
OF COSTS AND ATTORNEYS' FEES ON APPEAL
(FED. R. APP. P. 7)**

**January 29, 2016**

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

**TABLE OF CONTENTS**

MOTION ........................................................................................................................3
MEMORANDUM IN SUPPORT .................................................................................3
    I.     Introduction ........................................................................................................3
    II.    Legal Standard...................................................................................................5
    III.   The Court Should Require an Appellate Bond .....................................................6
        A.     The Appeal Lacks Merit.........................................................................6
            1.     The Court Approved the Objector Receipt Requirement. ................8
            2.     The *Cy Pres* Distribution was a Careful Exercise of the COurt's Discretion......................................................................................10
            3.     The Attorney Fees and Expenses were Carefully Evaluated and Well Within the Court's Discretion...........................................10
        B.     Dylan Jacobs Has The Financial Ability To Post A Bond..........................10
        C.     There is Significant Risk the Appellant Would Not Pay Appellee's Costs if the Appeal is Unsuccessful. ......................................................11
        D.     Public Policy Weighs in Favor of Requiring a Bond for a Repeat Objector...............................................................................................12
    IV.   The Court Should Impose a Bond of $78,000 ......................................................14
    V.    Conclusion .........................................................................................................16
    CERTIFICATE OF SERVICE..................................................................................18

**MOTION**

Plaintiffs move the Court for entry of an Order requiring the lone objector, Dylan Jacobs, to post an appellate bond in the amount of $78,000 for costs associated with the appeal.

**MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

Plaintiffs purchased items at one Walmart or Sam's Club store, returned the items to a different store location, and alleged Wal-Mart did not refund the full amount paid: Wal-Mart only refunded an amount equal to the price of the items plus the lower sales tax rate at the return store.  Plaintiffs claimed this practice is in breach of Wal-Mart's contractual agreement in a class action complaint (Doc.#: 1) filed on May 2, 2014.

In the year and a half since filing the action, the Parties engaged in extensive discovery, including obtaining voluminous transaction data and taking depositions of both named Plaintiffs and multiple corporate witnesses.  The Parties also undertook significant motion practice, including multiple Motions to Dismiss, Motions to Stay Discovery, a jurisdictional challenge, class certification briefing, cross Motions for Summary Judgment, and a Daubert challenge to Plaintiffs' expert.  Thereafter, the Parties mediated a provisional class-wide settlement with the assistance of former federal judge Layn Phillips.  Class Members (and all Walmart shoppers) get forward-looking, injunctive relief, under which Wal-Mart agrees to develop and implement an electronic system to automate the process of calculating the applicable sales tax refund (if any) when items are returned.  Wal-Mart further agrees to utilize such a system for at least three years from November 1, 2016, or the Settlement Effective Date, whichever is

3

later.  (Settlement Agreement, §6.)  Wal-Mart acknowledged this lawsuit as a substantial catalyst in Wal-Mart agreeing to provide the injunctive relief.  (Id. ¶6.3.2.2.)

The Class Members also get significant compensatory relief: Wal-Mart agreed to a $5,000,000 settlement fund, which provides for payment to Settlement Class Members who submit claims in the form of a gift card redeemable at Walmart stores, Sam's Clubs or online, settlement administration costs, attorneys' fees and expenses, and incentive payments to class representatives. (Id. ¶6.3)  The value of each gift card will be $15.  Remaining Class Member Payment Amounts would be donated to public benefit groups under the *cy pres* doctrine.

The Court granted preliminary approval on July 16, 2015, approved the Notice Plan (including long and short form notices to potential class members), and set the final approval hearing to take place on December 17, 2015.

The Claims Administrator received 31,503 online claim forms and 36 paper claim forms for a total of **31,539 claims**.  There was one objector: Dylan Jacobs.  Mr. Jacobs filed an objection, but declined to be present for the final fairness hearing.  The single objector did not challenge the fairness of the settlement.  Instead, he complained that: (1) inadequate notice as the result of requiring objectors to produce a receipt demonstrating membership in the class, which Mr. Jacobs claims, was not approved by the Court; (2) *cy pres* distributions are a bad idea; and (3) the attorneys' fees are too high.  In reality, the Court directly approved the receipt requirement, which was part of the Court-approved Settlement Agreement, as well as the Court-approved notice to class members.  Requiring some proof of class membership from objectors is not at all unusual, as it merely demonstrates standing to lodge the objection in the first instance,

an important factor given the proliferation of serial, professional objectors. *Cy Pres* distributions are also not uncommon in consumer class actions, to ensure the type of consumers at issue (and the public) benefit from the results, rather than a windfall reverter back to the defendant. Given the extraordinary results in this case, the requested fees were well in line with other class action cases in this circuit.

Prior to the December 17, 2015 hearing, Plaintiffs filed Plaintiffs' Motion for Final Approval of Settlement (Doc.#: 81) and Motion for Approval of Attorneys' Fees and Expenses (Doc.#: 79). The Court held the fairness hearing as scheduled, and issued its Final Approval of Class Action Settlement and Attorneys' Fees and Expenses (Doc.#: 86) on December 21, 2015. The Court considered and dismissed Mr. Jacob's objections.

Mr. Jacobs has now filed a notice of appeal, halting any distribution of settlement funds to class members. Because of the risks this out-of-district objector poses to paying any recoverable appellate costs, a bond is appropriate.

## II. LEGAL STANDARD

Under Appellate Rule 7:

> In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal. Rule 8(b) applies to a surety on a bond given under this rule.

Fed. R. App. P. 7.

"Rule 7 is designed to 'protect the right of appellees.'" Gemelas v. Dannon Co., N.D.Ohio No. 1:08 CV 236, 2010 WL 3703811, *1 (Aug. 31, 2010) (Polster, J.) (quoting Adsani v. Miller, 139 F.3d 67, 75 (2d Cir.1998) and citing In re Cardizen CD Antitrust

Litig., 391 F.3d 812, 818 (6th Cir.2004) (applying Adsani standard to Sixth Circuit evaluations of Rule 7 bonds)).

"The district court's decision to impose a bond and to determine its amount lies within the district court's discretion." Id.; see also Adsani, 139 F.3d. at 79; In re Cardizem, 391 F.3d at 818 (citing Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 757 (D.C. Cir. 1980)); Thom v. Am. Std., Inc., N.D.Ohio No. 3:07 CV 294, 2009 WL 2224086, *1 (July 23, 2009) ("This standard is permissive, allowing a court to use its discretion as to whether the issuance of an appeal bond is necessary."); Fed. R. App. P. 7 Advisory Committee's Note, 1979 Amendment.

In deciding whether to impose a Rule 7 bond, courts typically consider: (1) the merits of the appeal; (2) appellant's financial ability to post a bond; (3) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful; and (4) whether the appellant has shown any bad faith or vexatious conduct. See, e.g., Tri-Star Pictures, Inc. v. Unger, 32 F. Supp. 2d 144, 147-150 (S.D.N.Y. 1999).

### III. THE COURT SHOULD REQUIRE AN APPELLATE BOND

#### A. THE APPEAL LACKS MERIT.

In determining whether to set a bond, a court should primarily take into account the likelihood that the objectors' appeal will be unsuccessful. See, e.g., In re Cardizem, 391 F.3d at 817-18; Adsani, 139 F.3d at 79 (affirming the district court's imposition of an appeal bond after "look[ing] to the merits of the appeal itself' and determining that appellant's case was found to be "objectively unreasonable"); In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (class member who filed notice of appeal from settlement required to post an appeal bond because the court found the appellant's position "objectively unreasonable"); In re Compact Disc Minimum

6

Advertised Price Antitrust Litig., No. MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (considering whether appeal "might be frivolous" in deciding whether to impose a bond).

The standard of review for approval of a class action settlement is abuse of discretion. Fidel v. Farley, 534 F.3d 508, 513 (6th Cir.2008). Mr. Jacobs will be required to demonstrate that this court abused its discretion in finding that the proposed settlement is "fair, adequate and reasonable." Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. 1983). Mr. Jacobs failed to even argue the settlement did not meet this standard. Instead, he raised minor or peripheral issues, arguing that parts of the settlement should be a little different.  "Factual findings regarding notice"—one of the bases for Mr. Jacobs's objection—"are reviewed for clear error." Id. (citing DeJulius v. New England Health Care Employees Pension Fund, 429 F.3d 935, 942 (10th Cir.2005)).

The three issues Jacobs did raise, are well within the Court's discretion to decide: (1) whether the Parties injected, without Court approval, the requirement that objectors demonstrate class membership through producing a receipt; (2) whether *cy pres* distributions to unknown groups are a bad idea; and (3) whether the attorney fees and expenses were reasonable.  The Court considered and rejected these arguments.

"It is well settled law that [Sixth Circuit] Court[s] will not consider an error or issue which could have been raised below but was not." *Niecko v. Emro Marketing Co.,* 973 F.2d 1296, 1299 (6th Cir.1992) (citing *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 559 (6th Cir.1990)).  Mr. Jacobs is therefore restricted to those objections raised in

7

this Court in his appeal.  Mr. Jacobs cannot credibly claim the Court abused its discretion on these issues.  The appeal will fail.

Where the Court has considered the objections at issue and rejected them, within the Court's discretion, there is a strong basis to impose a bond on appeal.  This is particularly true because "courts have discretion to impose appeal bonds to prevent frivolous, unreasonable or groundless litigation."  Gemelas, 2010 WL 3703811 at *2 (finding the "appeal to be frivolous, unreasonable and groundless.").  Because Mr. Jacobs's arguments were considered and rejected, and because the Court was exercising its discretion, the appeal lacks merit and a bond should be required.

        1.        THE COURT APPROVED THE OBJECTOR RECEIPT REQUIREMENT.

Mr. Jacobs's primary argument was that the Court never approved the requirement that objectors should demonstrate class membership by producing a legible receipt, suggesting this was some requirement set by Counsel, not the Court.  This is untrue, and appealing this issue is *per se* frivolous.  The Court expressly approved the receipt requirement for objectors as part of both the Notice language and the Online Claim Form.  (See Doc.#: 75 at 4 ("The Court approves (a) the form and substance of the notice to Settlement Class Members as set forth [in] the Notice Plan; and (b) the Online Claim Form, ***attached to the Agreement as an exhibit.***") (emphasis added); and Doc.#: 73-1 at 29 (the long form notice attached to the Settlement Agreement with instructions on objections including requiring "(d) legible copies of receipts demonstrating that you are a member of the Settlement Class.").)

Mr. Jacobs's argument that requiring a receipt for objectors to demonstrate class membership is unusual or unfair was unsupportable, unsupported, and rejected by the

8

Court in light of the fact that requiring a receipt or other form of class membership verification is a valid form of authenticating class members and objectors used in myriad consumer class actions. See, e.g., Date v. Sony Elecs., Inc., 2013 WL 3945981, *6 (E.D. Mich. July 31, 2013) (approving class action settlement with receipt as proof of class membership component); In re Skechers Toning Shoe Products Liab. Litigation, 2012 WL 3312668, *17 (W.D. KY Aug. 13, 2012) (objectors "must include proof of purchase of the Eligible Shoes," which proof "includes an itemized cash register receipt, a credit card receipt or a credit card statement that sufficiently indicates the purchase of the Eligible Shoes.").

Requiring a receipt is an application of the pervasive rule that a party bears the burden of establishing standing to be before the Court. Feder v. Elec. Data Sys. Corp., 248 F. App'x 579, 581 (5th Cir. 2007) ("seeking to establish jurisdiction, [the objector] bears the burden of proving standing. The elements of standing must be supported as any other matter on which the plaintiff bears the burden of proof at the corresponding stage of litigation. The necessary elements of [objector's] standing to object could be established by proof of his class membership.") The Feder Court found the objector lacked standing because he "produced no evidence substantiating his membership in the class." This is in line with the "public policy reasons to prevent frivolous objectors from threatening to hold up class distributions." Gemelas v. Dannon Co., No. 1:08 CV 236, 2010 WL 3703811, *3 (N.D. Ohio Aug. 31, 2010) (quoting In re Pharm. Inc., 520 F.Supp.2d 274, 279 (D.Mass.2007)).

Because requiring documentation like a receipt is appropriate for class members or objectors, the Court properly exercised its discretion in finding the notice and

9

objection procedures complied with minimum due process requirements. The fact that the Court considered Mr. Jacobs's objection, moreover, moots the argument. Any appeal based on this objection cannot have merit under an abuse of discretion standard or constitute clear error with respect to the Court's factual findings regarding notice.

### 2. THE *CY PRES* DISTRIBUTION WAS A CAREFUL EXERCISE OF THE COURT'S DISCRETION.

Mr. Jacobs likewise argued that *cy pres* distributions are a bad idea, but they are certainly not improper or unusual in class actions like this. It can hardly be that the Court abused its discretion, particularly where, as here, the Court not only scrutinized the recipients, but determined only one of the proposed recipients matched the absent class members closely enough to receive funds. That is an exercise of discretion, not an abuse of it.

### 3. THE ATTORNEY FEES AND EXPENSES WERE CAREFULLY EVALUATED AND WELL WITHIN THE COURT'S DISCRETION.

As with the *cy pres*, the Court carefully considered the attorney fees and expenses award, both in briefing and at the final fairness hearing. The decision included a careful evaluation of the percent-of-fund methodology and an hourly rate cross check, perfectly in keeping with Sixth Circuit precedent. The fees and expenses were reasonable on their face, and the Court's decision was not an abuse of discretion, even before considering the value of the injunctive relief achieved. Mr. Jacobs cannot succeed in this appeal under the abuse of discretion and plain error standards.

### B. DYLAN JACOBS HAS THE FINANCIAL ABILITY TO POST A BOND.

Mr. Jacobs is finishing law school at Vanderbilt in 2016. This past summer Mr. Jacobs interned at two major law firms, Jones Day's D.C. office, and Friday, Eldredge & Clark's Little Rock, Arkansas office. Mr. Jacobs is not indigent, and should clearly have

the funds to post a bond in this case.  It is Mr. Jacobs's burden to demonstrate that the bond would constitute a barrier to his appeal.  <u>In re: Cardizem CD Antitrust Lit.</u>, 391 F.3d 812, 818 (6th Cir.2004).  Absent evidence to the contrary, Courts should presume ability to pay.  <u>In re Initial Pub. Offering Securities Litigation</u>, 728 F.Supp.2d 289, 293 (S.D.N.Y.2010) ("[T]he Objectors have not presented any evidence demonstrating that they lack the financial ability to post a bond. Accordingly, the Objectors' ability to do so is presumed.").

This is the second class action settlement in which Mr. Jacobs has sent an objection and not appeared at the fairness hearing.   (Exhibit 1, Jacobs Objection in Perkins v. Linkedin Corporation, ND California Case 5:13-cv-04303-LHK).  Presumably an appeal will follow in that class action when settlement is finalized.  As Judge Polster found in the Dannon class action settlement appeal, when someone makes routine objections, does not appear at the fairness hearing, and appeals, presumably he has the money to post a bond: "Additionally, Plaintiffs have shown that this is the *fourth* class action of which he claims to be a class member, has filed rote objections, does not appear at the fairness hearing and then appeals the district courts' rulings granting final approval for class action settlements. It costs $450 to file an appeal. He apparently has the funds to appeal class action settlements." <u>Gemelas v. Dannon Co.</u>, N.D.Ohio No. 1:08 CV 236, 2010 WL 3703811, *2 (Aug. 31, 2010).

C.  <u>THERE IS SIGNIFICANT RISK THE APPELLANT WOULD NOT PAY APPELLEE'S COSTS IF THE APPEAL IS UNSUCCESSFUL.</u>

Mr. Jacobs is a resident of Arkansas, in Tennessee only for law school.  Whether Mr. Jacobs returns home after law school or elsewhere for work, there is a high likelihood he will be outside the Sixth Circuit by the time an appeal is concluded.  Both

of his recent employments in law school were outside the Sixth Circuit: Jones Day's D.C. office, and Friday, Eldredge & Clark's Little Rock, Arkansas office.

Where an objector will likely be outside the Sixth Circuit, this factor weighs in favor of imposing a bond. In re Initial Pub. Offering Sec. Litig., No. 21 MC 92, 2010 WL 2884794, at *1-5 (S.D.N.Y. July 20,2010); Fleury v. Richemont N. America, Inc., 2008 WL 4680033, *7 (Oct. 21, 2008) ("Ms. Meyer is not a resident of California, nor does she reside in a state within the Ninth Circuit . . . which arguably would make it more difficult for the Settling Parties to collect their costs should they prevail on the appeal. This factor weighs in favor of a bond.").

### D. PUBLIC POLICY WEIGHS IN FAVOR OF REQUIRING A BOND FOR A REPEAT OBJECTOR.

Since filing his objection in this case, Mr. Jacobs filed an almost identical objection in the LinkedIn privacy class action—e.g., the *cy pres* objection is word-for-word identical, a cut-and-paste job—and wants lawyers to earn less from the class actions for no articulable reason. Mr. Jacobs appears to be a serial objector in the making.

As Judge Polster noted in providing for an appeal bond for a serial objector raising issues unlikely to be reversed on appeal, public policy weighs in favor of imposing a bond:

> Finally, "there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions." *In re Pharm. Inc.,* 520 F.Supp.2d 274, 279 (D.Mass.2007). Serial objectors such as Mr. Padgett should not be encouraged to continue holding up valuable settlements for class members by filing frivolous appeals.

Gemelas v. Dannon Co., N.D.Ohio No. 1:08 CV 236, 2010 WL 3703811, *2 (Aug. 31,

12

2010).

Mr. Jacobs appears to simply dislike *cy pres* awards and attorney fees, because he made identical arguments recently in the LinkedIn advertising class action, weighing in favor of requiring a bond. Where an individual "appears to be making a business of objecting to, and appealing, class action settlements in order to obtain some financial reward," particularly where it "appears to be a 'form appeal,'" a Court should find the appeal "devoid of merit." Id.

The sections of Mr. Jacobs's *cy pres* objection in the LinkedIn case (left) and here (right) are virtually identical:

| | |
|---|---|
| My first objection to *cy pres* is that it is generally a bad practice. A number of commentators have noted "the specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety." *Nachshin* v. *AOL, LLC,* 663 F.3d 1034, 1039 (9th Cir. 2011); see also *SEC* v. *Bear, Stearns & Co.,* 626 F.Supp.2d 402, 415 (S.D.N.Y. 2009). | My first objection to *cy pres* is that it is generally a bad practice. A number of commentators have noted "the specter of judges and outside entities dealing in the distribution and solicitation of settlement money may create the appearance of impropriety." *Nachshin* v. *AOL, LLC,* 663 F.3d 1034, 1039 (9th Cir. 2011); see also *SEC* v. *Bear, Stearns & Co.,* 626 F.Supp.2d 402,415 (S.D.NY. 2009). |
| Second, it is troubling that no recipient is identified in the settlement agreement. The ALI Principles stress in § 3.07(c) that "the court. when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class." Thus, at the time this Court is to approve the settlement, no one has any idea whether the *cy pres* funds will even indirectly benefit the class. | Second, it is troubling that no recipient is identified in the settlement agreement. The ALI Principles stress in § 3.07(c) that "the court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class." Thus, at the time this Court is to approve the settlement, no one has any idea whether the *cy pres* funds will even indirectly benefit the class. |
| A better alternative would be to distribute further rounds of payments to class members who cash their initial checks. This was done by Judge King in the Bank of America Overdraft Class Action settlement. | A better alternative would be to distribute further rounds of payments to class members who cash their checks. This was done by Judge King in the Bank of America Overdraft Class Action settlement. |

Likewise, Mr. Jacobs's objections to the attorney fees are identical attacks:

- The request is "unreasonable";

13

- The percentage is too high; and
- The case took too little time.

Given the serial nature of these objections, the Court should favor imposing a bond to prevent frivolous appeals.

### IV. THE COURT SHOULD IMPOSE A BOND OF $78,000

"The district court's decision to impose a bond and to determine its amount lies within the district court's discretion." Gemelas v. Dannon Co., N.D.Ohio No. 1:08 CV 236, 2010 WL 3703811, *1 (Aug. 31, 2010) (citing Adsani, 139 F.3d at 79, In re Cardizem, 391 F.3d at 818). Plaintiffs propose a bond amount of $78,000, which includes costs associated with the appeal (excluding attorney fees), administrative costs anticipated will be incurred by delaying class distribution, and attorney fees based on the frivolous nature of the appeal. These amounts represent new costs being incurred on behalf of the class because of Mr. Jacobs's decision to file an appeal with no reasonable likelihood of success.

Plaintiffs anticipate $25,000 in preparation and filing costs for appellate briefing and oral argument. While Rule 7 does not require plaintiffs to make any "showing of costs for a bond motion," In re Ins. Brokerage, 2007 WL 1963063, at *3, courts routinely apply $25,000 as a minimum benchmark amount of costs for appeals to class action settlements. See, e.g., In re Initial Pub. Offering, 2010 WL 2884794, at *5 (assessing $25,000 on settlement objectors for cost aspects of Rule 7 bond); In re Ins. Brokerage Antitrust Litig., MDL Docket No. 1663, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3-5 (D.N.J. July 02, 2007) (imposing a "reasonable" $25,000 appeal bond for objectors to class settlement based on line of precedent); In re Compact Disc, 2003 WL

14

22417252, at *2 ($35,000 appeal bond); In re Currency Conversion Fee, 2010 U.S. Dist. LEXIS 27605, at *9 ($50,000 appeal bond).

The Claims Administrator estimates there will be an additional $13,000 – $18,000 in costs from continuing administration of the class—including costs of maintaining the fund, notice to class members of the delay, and keeping the telephone hotline open—as a direct result of an up to 18 month delay from appeal. (Exhibit 2, M. Pohl Declaration.)

When an appeal involves a settled class action, Courts can add additional costs likely to be incurred through the delay of administering the class action or providing notice to class members. See, e.g., In re General Elec. Co. Securities Litigation, 87 Fed. R. Serv. 3d 1397 (S.D. N.Y. 2014) (noting that a piece of the appeal bond was the $5,000 cost of maintaining the settlement's telephone hotline during the appellate period); In re Netflix Privacy Litigation, 2013 WL 6173772, *4 (N.D. Cal. 2013) (approving appeal bond totaling $21,519 from each individual objector including administrative costs for "maintaining and administering the settlement website and toll-free phone number, answering questions from class members, managing and filing taxes for the settlement and escrow account, and paying monthly storage costs"); Tennille v. Western Union Company, 2013 WL 5716877 (D. Colo. 2013) (reapproving, on reconsideration, appeal bond of $1,007,294, primarily composed of costs of sending notice to the class of the appeal and administrative costs); Dennings v. Clearwire Corp., 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013) (imposing bond amount including $39,150 associated with additional settlement administration costs); In re Nutella Marketing and Sales Practices, 2012 WL 6013276, *2 (D.N.J. 2012), appeal dismissed, (3rd Cir 12-4424) (June 10, 2014) (concluding that "administrative costs can be secured

15

by a Rule 7 bond"); Miletak v. Allstate Ins. Co., 2012 WL 3686785, *2 (N.D. Cal. 2012) (allowing bond including $50,000 in additional settlement administrative costs).

Using the lower, more conservation estimate, the Court should add $13,000 to the appeal bond.

Plaintiffs anticipate at least 100 hours will be wasted on an appeal that has no likelihood of success, conservatively representing another $40,000 in recoverable costs should the appeal be found frivolous. (Lansdowne Declaration, Exhibit 3.)  Where a district court determines an appeal has little chance of success, the district court may impose a bond amount for attorneys' fees likely to be incurred because of the frivolous appeal. Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 959-60 (9th Cir. 2007); Young v. New Process Steel, LP, 419 F.3d 1201, 1206 (11th Cir.2005).  Imposing another $40,000 in a bond is warranted given the frivolous nature of this appeal, which will not succeed under the applicable abuse of discretion and clear error standard.

As such, a bond in the amount of $78,000 is appropriate.

## V.   CONCLUSION

The Court should impose a bond in the amount of $78,000 on the lone objector Mr. Jacobs.

Respectfully Submitted,

*/s/ William B. Eadie*
WILLIAM B. EADIE (0085627)
DENNIS R. LANSDOWNE (0026036)
STUART E. SCOTT (0064834)
NICHOLAS A. DICELLO (0075745)
DANIEL FRECH (0082737)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio  44114
(216) 696-3232 | (216) 696-3924 (FAX)

16

*weadie@spanglaw.com*
*dlansdowne@spanglaw.com*
*sscott@spanglaw.com*
*ndicello@spanglaw.com*
*dfrech@spanglaw.com*
www.spanglaw.com

***Class Counsel***

DANIEL J. MYERS (0087909)
**MYERS LAW, LLC**
610 Skylight Office Tower
1660 West Second Street
Cleveland, Ohio 44113
P: (216) 236-8202
F: (216) 674-1696
*DMyers@MyersLawLLC.com*

***Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed on January 29, 2016 with the Clerk of Court by using the Court's CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems by:

Karen L. Giffen, Esq.
Giffen & Kaminski, LLC
1300 East Ninth Street
Suite 1600
Cleveland, Ohio 44114

and

M. Scott Incerto
Peter A. Stokes
John Yslas
Fulbright & Jaworski LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701
Telephone: (512) 474-5201
Facsimile: (512) 36-4598
scott.incerto@nortonrosefulbright.com
peter.stokes@nortonrosefulbright.com
john.yslas@nortonrosefulbright.com

*Counsel for Defendant Wal-Mart Stores, Inc.*

*/s/ William B. Eadie*
WILLIAM B. EADIE (0085627)
**SPANGENBERG SHIBLEY & LIBER LLP**

*One of Class Counsel*